# ZAMECKI *v.* HARTFORD ACCIDENT & INDEMNITY COMPANY

[No. 105, October Term, 1952.]

*Decided March 13, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Sigmund Levin* and *Joseph O. Kaiser*, with whom were *Paul Berman* and *Theodore B. Berman* on the brief, for the appellant.

*G. C. A. Anderson*, with whom were *Anderson, Barnes & Coe* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

Appellant, Martha P. Zamecki, plaintiff below, filed an amended declaration in tort against Sonja Henie Ice Revue, Inc., Sonja Henie, also known as Sonja Gardiner, and Hartford Accident and Indemnity Company, a body corporate, defendants. A demurrer was filed to the amended declaration by Hartford Accident and Indemnity Company, hereinafter referred to as Hartford. The trial judge sustained that demurrer with leave to the plaintiff to amend. Upon refusal of the plaintiff to further amend, a judgment was entered for Hartford, appellee, for costs. From that judgment appellant appeals.

The declaration alleges, for the purposes of this case, the following: Sonja Henie is in the show business. Hartford is in the insurance business and issues liability policies. Sonja Henie hired and leased the Fifth Regiment Armory in Baltimore to conduct a show therein and by public advertisements invited the public to attend the show for an admission charge. In order to provide seating facilities for the large number of people "whom the defendants, Sonja Henie Ice Revue, Inc., and Sonja Henie, also known as Sonja Gardiner, individually and

trading as Sonja Henie Ice Revue of 1952, invited and expected and to whom they had sold tickets to attend the performance of their show or exhibition * * * the said defendants, their agents, servants and employees, procured and caused to be constructed and erected therein certain wooden grandstands," all to the knowledge of Hartford, "and, on the date hereinafter mentioned, the defendants, and each of them, their agents, servants and employees, had, exercised and retained supervision and control over the said grandstands and their construction and erection; * * *" Hartford had issued, in consideration of a premium, to a certain Coronati Amusements, Inc., a policy against liability arising out of the maintenance and use of the stands. Under this policy Hartford reserved the right to inspect and examine the grandstands. It was the duty of Sonja Henie to maintain and see that the stands were safe for the spectators. It was the duty of Hartford, if it elected to inspect and examine the grandstands, to exercise reasonable care in such inspection and to make disclosure of defects therein, which such inspection and examination ought to disclose. The plaintiff purchased a grandstand ticket to the performance on March 6, 1952. In breach of the duty of Sonja Henie to see that the stands were safe, the stands "had been constructed and erected and were maintained in a negligent, careless and improper manner, being insufficient in strength and lacking in stability and too weak in construction to sustain the weight" of the spectators and so "as to be dangerous to persons using them." Hartford in breach of the duty it owed to persons, including the plaintiff, whom it knew would occupy the stands, undertook to make and actually made an inspection and examination of the grandstands but did so in a negligent and careless manner in that it either negligently and carelessly failed to discover the weak, unstable, insufficient and negligent manner in which the stands were erected and maintained, or after discovery thereof, negligently and carelessly failed to make reasonable and appropriate disclosure of the weak, de-

fective and improper manner in which the grandstands had been erected, but issued a statement and order to its assured, Coronati Amusements, Inc., approving such construction. The plaintiff did not know that the grandstands were negligently constructed, but this was known or ought to have been known to the defendants. Due to the negligence of the defendants the stands collapsed and plaintiff was injured.

Nowhere in the declaration is there any allegation as to the connection of Coronati Amusements, Inc., with the erection of the stands or with any other phase of the case. Therefore, according to the allegations, the policy issued by Hartford was to a third party who had no connection with this case or with the alleged injury to the plaintiff. Therefore any action taken by Hartford was that of a pure volunteer without compensation. The certificate of safety issued by Hartford was issued to a third party. There is no allegation that the third party revealed the contents of that certificate to the plaintiff here or to anyone else. Therefore the certificate has no bearing on this case.

The allegations against Hartford are, therefore, that as a pure volunteer, without compensation, it exercised and retained supervision and control over the construction and erection of the grandstands, together with Sonja Henie. The stands were built by Sonja Henie, whose duty it was to maintain them in a safe condition. As a pure volunteer without compensation it undertook an inspection of the stands. It made the inspection in a negligent manner and failed to notify the plaintiff of the unsafe condition. It did not know the plaintiff, who was only a member of the public for whom the stands were erected.

The appellant relies strongly on the case of *Lawson v. Clawson,* 177 Md. 333, 9 A. 2d 755. In fact, we were informed by appellant in the argument that the words "exercised and retained supervision and control", which are the material allegations here, were taken from the declaration in that case. We have examined the record

58

in that case and find that the allegations therein as compared with those in the instant case are as follows: "* * * the defendants Mooney and Lawson [Henie only here], together with the Defendant Contos, Inc., superintendended the said show, and the preparations therefor; and [Henie and Hartford here] in general maintained supervision and control over the premises; that in order to accomodate the large crowd which attended the said show, the defendants, their respective agents, servants and employees, [Henie only here] procured and caused certain bleacher seats to be erected for spectators holding general admission tickets; that it then and there became and was the duty of the defendants, their agents, servants and employees, [Henie only here] to maintain the premises at the Armory in a reasonably safe condition in order to prevent injury to the spectators whom they [Henie only here] invited to attend for a cash consideration [to Henie only here], as stated above." In that case, where the doctrine of *res ipsa loquitur* was applied, this Court said, 177 Md. at page 343, 9 A. 2d at page 759: "By appellee's granted prayer, the jurors were required (a) to find that appellants invited him to attend the wrestling match, (b) that they charged him a cash admission fee thereto, and finding such facts asserted that it was appellants' duty to use ordinary care in seeing that the premises where the show was held and all appliances and bleacher seats there located were in reasonably safe condition for appellee, a paying spectator, and instructed the jurors that if they found appellants failed to exercise ordinary care in seeing that the bleacher seats were in a reasonably safe condition and finding further that such seats were unsafe and dangerous, that their condition caused them to collapse and the plaintiff was injured by reason of such collapse, then their verdict should be for the appellee as against appellants, regardless of whether they themselves erected the bleacher seats, unless they further found that appellee contributed to his own injury by failing to exercise that degree of care for his own safety which prudent

persons ordinarily exercised under similar circumstances. No criticism is made of that instruction, except that part of it which we have considered with reference to the contention that appellants are not liable because the bleacher seats were erected by an independent contractor. Having decided that, in view of the nature of the case and the facts and circumstances surrounding it, the defense that the seats were erected by the Washington Bleacher Seat Company and not by appellants is not tenable, the prayer, in our judgment, correctly instructed the jurors as to the law, and was properly granted."

In the instant case in the declaration there is no allegation that Hartford invited the appellant to the show or that Hartford charged her an admission fee. Although Hartford, together with Henie, is alleged to have "exercised and retained supervision and control over the said grandstands and their construction and erection", yet it is specifically alleged that it was "the duty" of Henie, "during the times when the persons to whom they sold tickets of admission were in and upon the premises * * * to maintain said premises and the facilities furnished for such persons, including the aforesaid grandstands, in a reasonably safe condition in order that such persons * * * should be reasonably safe and secure in their use of the said * * * grandstands." There is no allegation here that such was the duty of Hartford. We must hold that this case of *Lawson v. Clawson, supra,* so heavily relied on by the appellant, is not in point and of little help here.

The appellant also relies strongly on the case of *Otis Elevator Company v. Embert,* 198 Md. 585, 600-601, 84 A. 2d 876, 883, where the plaintiff was injured in stepping into an elevator which Otis had contracted with the owner of the building to fully maintain. This Court said in that case: "The decisive question is, what was the scope of Otis's undertaking. We assume that there is evidence legally sufficient to show negligence on the part of the building company in failing to warn passengers to 'watch their step' and not to stop the car by

opening the inner door. If Otis undertook the full duty of the owner in this respect, we assume that Otis would owe the same duty and be liable to the same extent as the building company. If, however, Otis had undertaken only to oil and grease, it would not have been liable for injury sustained through a mechanical defect in the elevator. Likewise, if it undertook only to inspect the elevator and keep it in repaid and operating condition, it would owe no duty with respect to operation of the elevators." Likewise, in the instant case, although it is alleged that Hartford, together with Henie, exercised and retained supervision and control over the grandstands, yet it is specifically alleged that it was the duty of Henie to maintain the stands in a safe condition.

Where there is charged non-performance of an act, and yet no duty owed to the injured party, the law of this State seems to be that the defendant is not liable. *East Coast Freight Lines v. Consolidated Gas, Electric Light and Power Company*, 187 Md. 385, 402, 50 A. 2d 246; *Marlboro Shirt Company v. American Dist. Tel. Co.*, 196 Md. 565, 77 A. 2d 776.

In *Van Winkle v. American Steam Boiler Ins. Co.*, 52 N. J. L. 240, 19 A. 472, also stressed by the appellant, the insurance company for a consideration cooperated actively with the owner of a boiler, a dangerous instrumentality, in its management. There is no such allegation of duty of maintenance against Hartford here. Likewise, *Sheridan v. Aetna Cas. & Sur. Co.*, 3 Wash. 2d 423, 100 P. 2d 1024, and *Bollin v. Elevator Construction & Repair Co., Inc.*, 361 Pa. 7, 63 A. 2d 19, 6 A. L. R. 2d 277, are not in point.

We next reach the allegation that Hartford negligently inspected the grandstands and failed to advise the plaintiff of their negligent construction. As above set out, Hartford in making this inspection, did so as a mere volunteer, without consideration, without the knowledge of the plaintiff, and with the duty on Henie to maintain the stands in a safe condition. The cases relied on by the plaintiff do not present any situation comparable to

that of Hartford here. For instance, in the *Van Winkle* case, *supra,* so heavily relied on by the plaintiff, the duty of maintenance was undertaken by the defendant. In *Consolidated Gas Co. v. Connor,* 114 Md. 140, 78 A. 725, 32 L. R. A., N. S., 809, there was a duty on the part of the Gas Company to repair the service pipe. In *Dahms v. General Elevator Co.,* 214 Cal. 733, 7 P. 2d 1013, the defendant contracted to keep the elevator in repair. In *Albert v. State, use of Ryan,* 66 Md. 325, 7 A. 697, the defendant was the lessor of the wharf, which collapsed. In *Kaplan v. Stein,* 198 Md. 414, 84 A. 2d 81, and *Rounds v. Phillips,* 166 Md. 151, 170 A. 532, the defendant was the supplier of the dangerous instrumentality. In *Virginia Dare Stores v. Schuman,* 175 Md. 287, 1 A. 2d 897, and *Holt v. Kolker,* 189 Md. 636, 57 A. 2d 287, the plaintiffs relied on assurances made by the defendant.

We must conclude from the allegations of the declaration here that this is an attempt to hold an insurance company, which issued a liability insurance policy to a third party who is not alleged to have any connection with the case, as a principal for damages regardless of the amount of that policy. We find no authority to sustain such an action. The trial judge rightly sustained the demurrer of Hartford Accident & Indemnity Company. Of course the liability of Sonja Henie Ice Revue, Inc., or Sonja Henie, or the liability of Hartford to Coronati Amusements, Inc., is in no way passed upon in this opinion. The judgment for Hartford will be affirmed.

*Judgment affirmed, with costs.*