ROY NOBLE LEE, Presiding Justice,
for the Court:
Richard Goodwin and Christine Goodwin filed suit in the Circuit Court of Harrison County, seeking damages against James 0. Jackson, Sr., d/b/a Jackson’s Trailer Park, and St. Paul Fire and Marine Insurance Company, for the wrongful death of their minor child, Heather Goodwin. The lower court granted a summary judgment in favor of St. Paul Fire and Marine Insurance Company [St. Paul], and entered judgment in favor of Jackson on a jury verdict. The Goodwins have appealed from both judgments and Jackson has cross-appealed, contending that the lower court should have sustained his motion for a dismissal and directed verdict.
The body of Heather Goodwin, age 3 years ten months, was found in the swimming pool of Jackson’s Trailer Park, operated by James 0. Jackson, Sr., between 7:30 and 8:00 p.m. on July 8, 1981. The child lived with her parents in a house approximately seventy-five (75) yards from the trailer park. Apparently, she had wandered from home to the trailer park pool, where she drowned. The pool was enclosed by a wire fence, but the unlocked gate opening into the pool area was open.
The Goodwins filed suit claiming liability against St. Paul under Restatement (Second) of Torts § 324(A) (1965), and against Jackson, under Restatement (Second) of Torts § 339 (1965). The lower court sustained a motion for summary judgment in favor of St. Paul, but submitted the case to the jury as to the liability of Jackson. As stated, the jury returned a verdict in favor of Jackson.
I.
DID THE LOWER COURT ERR IN GRANTING SUMMARY JUDGMENT ON BEHALF OF ST. PAUL FIRE AND MARINE INSURANCE COMPANY?
At the time of the tragic incident resulting in the death of Heather Goodwin, a policy of liability insurance issued by St. *1043 Paul covered the Jacksons for all sums which they might be legally obligated to pay as damages because of bodily injury or property , damages sustained on the trailer park premises. The policy did not create any obligation from St. Paul to the appellants or persons other than the insured. The policy contains the following provision in the “Conditions” section:
2.Inspection and Audit
The Company shall be permitted but not obligated to inspect the Named Insured’s property and operations at any time. Neither the Company’s right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful or are in compliance with any law, rule or regulation.
The Company may examine and audit the Named Insured’s books and records at any time during the policy period and extensions thereof and within three years after the final termination of this Policy, as far as they relate to the subject matter of this insurance.
A loss prevention representative of St. Paul conducted a survey of the trailer park premises and submitted the following recommendations:
1. All trailers in this park should be properly and securely anchored....
2. The swimming pool should be securely fenced with a fence not less than 5 feet high and the gate should be locked at 10 o’clock at night....
3. Swimming pool rules should be posted and should include advice on hours of operation, no life guard warning, swimming for park residents only, and small children should be accompanied by an adult....
4. Depth of pool should be marked on sides of pool at 2 foot intervals_
5. A rope partition should separate shallow end of pool from deep end....
6. A shephards [sic] crook life ring device should be available at the pool....
St. Paul advised the Jacksons of the abové recommendations by letter dated October 29, 1980, following:
RE: Policy Number: 586JN2021
Our Loss Prevention Representative recently made a survey of your premises. Attached are some recommendations developed by that call. It is not intended that these recommendations, or our survey, cover the requirements of the Federal Occupational Safety and Health Act or any other safety or health laws, rules or regulations. They are made for underwriting purposes and to assist you with your loss prevention program.
The maintenance of safe premises and safe procedures for the protection of the public, your employees or your property, can be accomplished only by you; however, if you have any questions, or if we can be of any further assistance in your loss prevention program, please do not hesitate to call on us.
We will appreciate your letting us know, as soon as possible, what action has been, or will be, taken on the attached recommendations. If you prefer, just use the back of this letter and the enclosed envelope for your answer. Sincerely,
/s/ BILL HOLLINGSWORTH
Bill Hollingsworth,
Loss Prevention Department
BH/md
Restatement of Torts (Second) § 324(A) (1965), upon which appellants rely for their claim, follows:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
*1044 (b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
Appellants cite Hartford Steam Boiler Inspection & Insurance Co. v. Cooper, 341 So.2d 665 (Miss.1977), and assert that this Court adopted- Section 324(A), supra. Hartford is distinguished from the present case and did not address the issue posed by Section 324(A). At page 667, Fn. 1, the Court noted: “The facts do not bring the present case within Rule 324A and we do not decide whether or not the rule should be adopted in whole or in part.”
In holding that Hartford had no duty imposed by the. policy, this Court said:
If Hartford and Mason had a duty to inspect, the obligation must derive either from the policy or because Hartford and Mason assumed responsibility for performing inspections to the extent that they should have recognized the inspection of the machines was necessary for the protection of third persons.
The provision of the policy giving Hartford the right to inspect is permissive. There is no obligation to make inspections and the proof shows that such inspections as Mason made were for the purpose of reducing the risk of loss that Hartford might have under the policy. The incidental benefits that accrued to Sanderson's employees and the public by Mason’s inspections and recommendations should not rationally give rise to liability for failure to inspect a particular piece of equipment. See Zamecki v. Hartford Accident & Ind. Co., 202 Md. 54, 95 A.2d 302 (1953).
In our opinion, there was no reason why Hartford and Mason should have recognized that Sanderson’s employees or third persons were dependent upon Mason’s inspections or that inspections by Mason were necessary for their protection. Mason made inspections only for the purpose of reducing risk of loss under Hartford’s policy.
We hold that Hartford and Mason had no duty to make inspections generally or to inspect the machine in question.
341 So.2d at 667.
The testimony of the appellee Jackson and his wife is without contradiction that they did not rely upon St. Paul for prevention of losses in connection with the safety program at Jackson’s Trailer Park and that they did not rely on St. Paul to maintain safe practices and procedures, which they considered to be their (Jackson) responsibility. See Goodin v. Gulf Coast Oil Co., 241 Miss. 862, 133 So.2d 623 (1961); Cook v. State Farm Mutual Ins. Co., 241 Miss. 371, 128 So.2d 363 (1961); McArthur v. Maryland Casualty Co., 184 Miss. 663, 186 So. 305 (1939).
We are of the opinion that the lower court correctly granted the motion for summary judgment and dismissal of St. Paul. That position is fortified by the discussion hereinafter, which addresses the principal question of liability on the part of appellee Jackson.
II.
CROSS-APPEAL
THE LOWER COURT ERRED IN FAILING TO SUSTAIN APPELLEE JACKSON’S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED.
The discussion and decision on this issue obviates the necessity of addressing the questions presented in the direct appeal. The lower court overruled the motion of appellee Jackson to dismiss the first amended complaint filed against him and, at the conclusion of all the evidence, overruled his motion for directed verdict. The jury returned a verdict in favor of appellee Jackson, and the lower court entered judgment accordingly.
Appellants rely for their cause of action against appellee Jackson on Restatement *1045 of Torts (Second) § 339 (1965), which follows:
A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.
Appellants charge each of the five elements stated in Section 339 as relating to the swimming pool at Jackson Trailer Park.
In Gordon v. C.H.C. Corporation, 236 So.2d 733 (Miss.1970), which involved the death of a 10-year-old boy, who drowned in a motel swimming pool, the Court said:
However, counsel for appellant urges that the Court should reexamine this holding in the light of Section 339, Restatement of the Law of Torts (2d 1965). This section deals with conditions highly dangerous to trespassing children. In the discussion of this section it is pointed out that there are many dangers such as those of fire and water or falling from a height, which under ordinary conditions may be reasonably expected to be fully understood and appreciated by any child old enough to be allowed at large. To such conditions the provisions of Section 339, supra, are not applicable in the absence of other factors creating a special risk, such as the fact that the condition is so hidden that its danger is not readily visible or some distractive influence which makes it likely that a child will not discover or appreciate it.
236 So.2d at 735. See also McGill v. City of Laurel, 252 Miss. 740, 173 So.2d 892 (1965), and Thompson v. Illinois Central R.R., 105 Miss. 636, 63 So. 185 (1913).
In Ausmer v. Sliman, 336 So.2d 730 (Miss.1976), involving the death of a 6-year-old child, who drowned in an apartment building swimming pool, the Court said:
The long-established rule in this state is that water hazards are not attractive nuisances, and the attractive nuisance doctrine does not extend to swimming pools, although there may be exceptions where the hazards are hidden or concealed and are not likely to be found and avoided by a child. Gordon v. C.H.C. Corporation, 236 So.2d 733 (Miss.1970); McGill v. City of Laurel, 252 Miss. 740, 173 So.2d 892 (1965).
[[Image here]]
Under established law in this state the only duty owed the child, as a trespasser, was not to willfully or wantonly injure him. Langford v. Mercurio, 254 Miss. 788, 183 So.2d 150 (1966); Kelley v. Sportsmen’s Speedway, Inc., 224 Miss. 632, 80 So.2d 785 (1955).
We, therefore, conclude that the trial judge was correct in entering judgment for appellees, and the judgment must be and the same is affirmed.
336 So.2d at 731.
We are of the opinion that, as a matter of law, appellee Jackson was entitled to a dismissal of the complaint filed against him. Therefore, the judgments rendered in the lower court on direct appeal are affirmed, and the judgment denying the motion for summary judgment as to appellee Jackson is reversed and rendered on cross-appeal.
AFFIRMED ON DIRECT APPEAL; REVERSED AND RENDERED ON CROSS-APPEAL.
*1046 PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.