Gertrude C. Derosia, Administratrix of the Estate of Lyman R. Derosia v. Liberty Mutual Insurance Company

[583 A.2d 881]

No. 87-584

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed September 21, 1990

*Thomas W. Costello* and *Ardith L. Baldwin* of *Thomas W. Costello, P.C.*, Brattleboro, for Plaintiff-Appellee.

*Plante, Richards, Hanley & Gerety, P.C.*, White River Junction, for Defendant-Appellant.

Allen, C.J. Defendant workers' compensation insurer appeals from a judgment entered in the Windham Superior Court on a jury verdict for plaintiff, who was injured in an industrial accident. We affirm.

On December 4, 1981, plaintiff, an employee at The Book Press in Brattleboro, severely lacerated the tips of three fin-

gers on his right hand while operating a table saw. Plaintiff sued the manufacturer of the table saw and amended his complaint to include defendant, the workers' compensation insurer for The Book Press. Defendant moved for summary judgment on grounds that 21 V.S.A. §§ 601–709 prohibited actions against an employer's workers' compensation insurance carrier. The trial court denied the motion, and certified the issue to this Court, which decided the issue in plaintiff's favor, *Derosia v. Duro Metal Products Co.*, 147 Vt. 410, 519 A.2d 601 (1986).

Plaintiff proceeded at trial on the theory that defendant conducted safety inspections at the premises of plaintiff's employer in a negligent fashion. The undisputed evidence indicated that at the time of the accident the table saw was being used without a safety blade guard mechanism, in violation of applicable safety regulations. A safety guard had been supplied by the manufacturer of the saw, but it had been removed and stored in a closet in the shop.

The provision of the insurance contract between defendant and plaintiff's employer respecting the inspection of the employer's premises was as follows:

> INSPECTION AND AUDIT   The Company and any rating authority having jurisdiction by law shall each be permitted but not obligated to inspect at any reasonable time the workplaces, operations, machinery and equipment covered by this policy. Neither the right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the insured or others, to determine or warrant that such workplaces, operation, machinery or equipment are safe or healthful, or are in compliance with any law, rule or regulation.

Prior to and at the time of the accident defendant maintained a department known as the Loss Prevention Department, which had considerable expertise in the field of workplace safety. Department personnel knew that the table saw at The Book Press should be used with a safety guard. Department personnel toured The Book Press factory on several occasions in the years prior to the accident, including one time a few months before

the accident, and made recommendations about specific safety problems at the plant. Shortly before the accident, a Loss Prevention Department representative requested an opportunity to meet with The Book Press officials to discuss the problem of finger injuries on machinery at the plant. Because an immediate meeting was not feasible, the representative wrote that he would return to address the problem with the plant's manager. Plaintiff's accident occurred after this correspondence but before any such meeting occurred.

■ Defendant moved for a directed verdict at the close of plaintiff's case based on plaintiff's failure to present evidence of a duty or undertaking by defendant to conduct safety inspections, and the motion was denied. After the verdict was entered, defendant moved for judgment notwithstanding the verdict and for a new trial. Both motions were denied, and the present appeal followed.[1]

---

[1] This Court sua sponte ordered the parties to show cause why the appeal should not be dismissed for failure to file a timely notice of appeal. The motions under V.R.C.P. 59 and 50(b) were *served* within 10 days after entry of judgment, but were not *filed* with the court until a day later. We conclude that the language of Rule 59 is clear and only requires service within 10 days and filing a reasonable time thereafter. The motion for a new trial was timely. *Clayton v. Douglas*, 670 F.2d 143, 144 (10th Cir.) (motion served ten days after, but filed 12 days after entry of judgment), *cert. denied*, 457 U.S. 1109 (1982); *Sadowski v. Bombardier Ltd.*, 527 F.2d 1132, 1134 (7th Cir. 1975) (service made 8 days and Rule 59 motion filed 18 days after entry of judgment).

V.R.C.P. 50(b) requires that "[n]ot later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside . . . ." The rule is silent as to whether the ten-day time limit applies to filing or to service of the motion, or both. This Court has not addressed the question, but the argument in favor of reading the rule consistently with the interpretation of Rule 59 is strong. See 9 C. Wright & A. Miller, Federal Practice and Procedure § 2537, at 602 (1971). But see *Hahn v. Becker*, 551 F.2d 741, 744 (7th Cir. 1977); *United States v. Valdosta/Lowndes County Hosp. Auth.*, 91 F.R.D. 521, 523–24 (M.D. Ga. 1981); *McConnell v. United States*, 50 F.R.D. 499, 501–02 (E.D. Tenn. 1970). While it can be argued that a motion is "made" in the courtroom, not in correspondence between the parties, that argument is overwhelmed by the case for uniformity of construction.

In sum, both motions were timely and terminated the time for filing a notice of appeal until the entry of orders thereon. V.R.A.P. 4. Thus, the present appeal was timely.

### I.

### A. Undertaking by Defendant

■ Defendant's central argument on the merits is that plaintiff failed to introduce any evidence at trial that defendant had undertaken or promised to provide safety inspection services for The Book Press or plaintiff. The importance of this issue was signalled in *Derosia v. Duro Metal Products Co.*, 147 Vt. at 413, 519 A.2d at 604, where we concluded "that if a workers' compensation carrier undertakes to provide, rather than pay for, benefits and services, it should be liable in tort as 'a person other than the employer.' 21 V.S.A. § 624."

Section 324A of the Restatement (Second) of Torts delineates when an undertaking to render services to another may result in liability to a third person.[2] This Court has never formally adopted the language used in § 324A, but it has expressed views consistent with the basic theory of liability as set forth in § 324A. See *Smyth v. Twin State Improvement Corp.*, 116 Vt. 569, 570–71, 80 A.2d 664, 665 (1951) ("[T]he law imposes an obligation upon everyone who attempts to do anything for another, even gratuitously, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty an action lies."). The Restatement position is not a break from our earlier case law. Rather, it is a more detailed and inclusive statement of a position long taken. Embracing § 324A formally as a focus of analysis has the great benefit

---

[2] Restatement (Second) of Torts § 324A (1965) states:

Liability to Third Person for Negligent Performance of Undertaking. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

of opening for our consideration a considerable body of cases interpreting a single and comprehensive legal formulation.[3]

Under § 324A it is not an actor's undertaking alone which subjects him to liability, but rather it is the actor's "failure to exercise reasonable care to protect his undertaking," resulting in either (a) an increased risk of physical harm to the third person, (b) the assumption by the actor of a duty owed by the second person to the third person, or (c) harm to the third person resulting from reliance on the undertaking by the second or third person.

Plaintiff responds that he presented sufficient evidence to allow the jury to conclude that defendant undertook to perform inspection services for The Book Press—a duty that The Book Press owed to plaintiff; that defendant failed to exercise "reasonable care to protect [its] undertaking"; and that harm resulted from defendant's failure. We agree.

It is well established in reviewing the denial of a motion for a new trial that this Court will view the evidence in the light most favorable to the verdict and will accord the trial court all possible presumptive support. *Lent v. Huntoon*, 143 Vt. 539, 553, 470 A.2d 1162, 1171 (1983). The record before us reveals that defendant's loss-prevention activities were substantial. It maintained a department expressly devoted to loss-prevention initiatives, and Karl Jacobson, defendant's loss-prevention manager, regularly visited The Book Press, inspecting the facilities and making written recommendations from time to time for safety improvements. Jacobson testified that a narrative report prepared for defendant in 1977 after a site visit indicated that The Book Press management was interested in receiving defendant's loss-prevention services, and his observations in working with the company corroborated the statement in the report. The witness agreed that "the customer [The Book Press] had no particular expertise in safety or loss prevention" and that "[t]hat expertise was provided by Liberty in particular, the Loss Control Department."

---

[3] Defendant does not contend that we should not adopt § 324A as the touchstone of analysis, but rather argues that plaintiff's evidence does not satisfy § 324A's requirements.

Admitted into evidence was a seven-page "Progress Report" prepared by defendant detailing The Book Press's accident record for the period January 6, 1978, to January 6, 1979. Also admitted was a document entitled "Risk Management Meeting—Loss Prevention Report," in which Jacobson recounted his meeting with Steve Medved, personnel director of The Book Press on August 26, 1980, and which included a list of loss sources within the plant, the "plan of action" or current status on the loss sources, and the status of past recommendations. Following the August, 1980 meeting, Jacobson wrote Medved, attaching an accident analysis for the year January 6, 1979 to January 6, 1980. Jacobson testified that after concluding in September, 1980 that machines were a major source of injury at The Book Press, no recommendations were made to reduce or eliminate those injuries or risks. Jacobson further testified that his duties at The Book Press were assumed by Ted Braun in 1980, but he recalled nothing specific about whether the report's conclusions about the machinery hazards at The Book Press were transmitted to Braun.

Braun visited The Book Press on January 20, 1981, and wrote Medved on January 28, 1981, identifying manual material handling as the predominant source of loss and machine accidents as a "secondary source of loss." Braun submitted the next "Risk Management Meeting—Loss Prevention Report" dated May 1, 1981, noting under "loss sources" the entry "Machine Accident—Hand injuries in press room and bindery generally from feeding work into machines and presses—No commitment." Again, in the same report, Braun stated, "No plan of action developed on machine injuries." Later in May, 1981 Braun again wrote Medved, acknowledging Medved's indication that he would prefer to have periodic loss statements on a quarterly basis and cause-coded.

Braun testified that during the first ten months of his responsibility for The Book Press account he made no safety recommendations at all. He testified as follows:

Q: As of that time, as of May 1, [1981] no plan of action had been developed by you or by anyone else at Liberty to address the machine injury problem?

A: That is correct.

Q: And at that time—at least at that time, this particular problem had been identified and accepted by Liberty Mutual and by Book Press as a major source of loss or injury?

A: That is correct.

Q: Now, you, at that meeting, discussed the conclusions that that was a major source of loss?

A: At the risk management meeting, you are speaking of?

Q: Yes.

A: Yes.

Q: Did you as a result of that meeting form any recommendations to address this problem?

A: No.

Q: And did you subsequent to this meeting at any time compile or develop any recommendations to reduce the risk of injury or loss on account of this problem? . . . [A]fter that meeting, did you at any time develop any recommendations to address the injuries which you knew were occurring at that time on machines and injuries to hands?

A: No, I did not.

A letter dated October 7, 1981, from Braun to Steven Goss, The Book Press's plant engineer, (plaintiff's Exhibit 42) was introduced. It stated:

> I visited your plant on September 24, 1981 and spoke briefly with you. My main concern was the number of finger injuries on machinery that we have been seeing since the beginning of the year. I wanted to cover this in depth with you but you did not have the necessary time available. I indicated that I would be phoning you for another appointment.

Braun's testimony confirmed that he wanted to make another appointment at The Book Press to discuss further injuries to hands from machines but that he "was assigned responsibility for other accounts and this account was removed from [his] workload" on October 26, 1981.

Defendant relies on the absence of an express promise or undertaking by it in its insurance contract with The Book Press and on its right under that contract to conduct inspections without reliance by The Book Press on the results or recommenda-

tions following inspections. We agree that the agreement, standing alone, did not subject defendant to liability for conducting inspections and advising The Book Press of the results of those inspections. See *Taylor v. Jim Walter Corp.*, 731 F.2d 266, 267 (5th Cir. 1984); *Zamecki v. Hartford Accident & Indemnity Co.*, 202 Md. 54, 56–57, 95 A.2d 302, 303–04 (1953); *Goodwin v. Jackson*, 484 So. 2d 1041, 1043–44 (Miss. 1986).

But we disagree with defendant that there was no evidence from which the jury could reasonably have concluded that defendant undertook an obligation to provide a safe workplace, notwithstanding the statements in its written contract to the contrary. See *Thompson v. Bohlken*, 312 N.W.2d 501, 507 (Iowa 1981), where the court stated:

> Travelers [defendant insurer] also argues that it cannot be held under a duty of inspection under its insurance contract with [employer]. However, its liability for inspections does not arise from, nor is it circumscribed by, the contract of insurance; it arises . . . from its undertaking the responsibility of making such inspections in such a manner as to increase the risk of harm or create reliance to another's detriment.

See also *Hartford Steam Boiler Inspection & Insurance Co. v. Pabst Brewing Co.*, 201 F. 617, 629 (7th Cir. 1912); *Fireman's Fund American Insurance Co. v. Coleman*, 394 So. 2d 334, 338–39, 349–50 (Ala. 1980) (Jones, J., concurring); *Corson v. Liberty Mutual Insurance Co.*, 110 N.H. 210, 212, 265 A.2d 315, 318 (1970); *American Mutual Liability Insurance Co. v. St. Paul F. & M. Insurance Co.*, 48 Wis. 2d 305, 313, 179 N.W.2d 864, 868 (1970).

Defendant's citations do not compel a contrary conclusion. In *Goodwin v. Jackson* the court, without indicating whether it was adopting § 324A and without any analysis of that section, rejected plaintiff's claim because the insureds testified that they had not relied on the insurer at all. 484 So. 2d at 1043–44. In *Otto v. American Mutual Insurance Co.*, the court dismissed the plaintiff's claim because, contrary to the present case, the plaintiff "failed to plead sufficient material facts" to establish that the defendant insurer owed any duty to the plaintiff. 241 Pa. Super. 423, 434, 361 A.2d 815, 821 (1976). Similarly, *Zamecki v. Hartford Accident & Indemnity Co.*, which was decided be-

fore the promulgation of § 324A, hinged on the plaintiff's failure to even assert that the defendant owed any duty to the plaintiff. 202 Md. at 59, 95 A.2d at 305.

*Taylor v. Jim Walter Corp.*, alone among cases cited by defendant, is sufficiently similar to support defendant's position as a matter of general tort law. There the court relied upon prior Louisiana decisions which had specifically rejected application of § 324A to such cases. 731 F.2d at 267. In contrast, the position espoused in a majority of cases follows the standards of the Restatement, which more closely adhere to principles long followed in this state. Liability is not absolute for the insurer which undertakes an accident–avoidance program and is negligent in administering that program. The negligent inspection must result either in an increase in the risk of harm, in an undertaking to perform a duty owed by another to a third person, or in reliance by the insured or the employee of the insured upon the undertaking. This is a fair and administrable assignment of risk and one that is well within the competence of the trier of fact. We decline to follow the narrower position taken by the Louisiana intermediate court of appeals upon which the Fifth Circuit relied in *Taylor*.

■ There was sufficient evidence of an undertaking to perform the duty owed by The Book Press, within the meaning of § 324A(b) of the Restatement, to support the jury verdict. Defendant's own loss-prevention personnel conceded that The Book Press lacked safety expertise and that defendant offered to fill that gap. The personnel director of The Book Press confirmed that the company "relied on Liberty for particular expertise in safety matters." It was not necessary, in order to demonstrate defendant's undertaking, to establish that The Book Press was totally uninvolved with safety matters at its plant. As the court said in *Santillo v. Chambersburg Engineering Co.*, 603 F. Supp. 211, 215 (E.D. Pa. 1985), *appeal dismissed*, 802 F.2d 448 (3d Cir. 1986):

> In order for such a duty to arise, one does not have to assume the entire responsibility of another party. Employers have the duty to provide safe workplaces for their employees. . . . This duty could never, in reality, be fully delegated and assumed by another party . . . .

## B. Proximate Causation

■■ Defendant also argues that plaintiff did not prove that The Book Press would have responded to defendant's recommendations had they been made. Defendant misperceives the basis for recovery. We have concluded that the trial court did not err in letting the jury determine if defendant had undertaken to perform a duty owed by The Book Press to plaintiff within the meaning of § 324A(b) of the Restatement. Once the jury decided that defendant had undertaken that duty, it was free to conclude that defendant had not performed the duty with reasonable care, resulting in physical harm to plaintiff. Ted Braun of defendant's loss-prevention unit testified that if he had been aware of the absence of the guard he would have made a recommendation for its replacement. The speculation that The Book Press might not have acted on the recommendation does not interrupt the chain of causation. There may be more than one proximate cause of injury, *Choiniere v. Sulikowski*, 126 Vt. 274, 278, 229 A.2d 305, 308 (1967), and recovery may lie against any defendant whose negligence resulted in injury. *Tufts v. Wyand*, 148 Vt. 528, 530, 536 A.2d 541, 542 (1987); see also *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 88, 199 N.E.2d 769, 780 (1964).

## II.

■ Having concluded that the evidence was sufficient to go to the jury on the issues of defendant's undertaking to inspect and its negligence in performing that undertaking—§ 324A(b) of the Restatement—it is not necessary to assess defendant's claim that the evidence was insufficient to allow the jury to consider defendant's liability under § 324A(a) and (c). Reading § 324A(a) as a section intended to describe negligent conduct that directly increases risk of harm, we agree that there is no evidence, for example, that defendant caused or sanctioned the removal of the saw guard. The failures were ones of fulfillment—undertaking safety reviews and inspections, and then allowing those salutary activities to abate before completion with no warning to the employer that they would not be finished. But the three subsections of the Restatement are disjunctive, and it was sufficient that plaintiff produced enough evidence to go to

the jury on § 324A(b). *Johnson v. Abbe Engineering Co.*, 749 F.2d 1131, 1133 (5th Cir. 1984).

## III.

█  Defendant raises two issues concerning the admission of samples of defendant's advertisements, internal procedures, and company creed as evidence over defendant's objections. Defendant argued that the advertisements were irrelevant and that plaintiff failed to lay a proper foundation for their introduction because there was no evidence that plaintiff or The Book Press ever saw or relied on the advertising statements. In one instance, plaintiff justified the introduction of advertisements to impeach the testimony of one of defendant's employees. In another, plaintiff justified introduction to corroborate plaintiff's contention that defendant undertook to provide a safe workplace for its insureds and their employees and to challenge defendant's basic trial position that the inspections did not represent any undertaking, but rather, that they were for the defendant's purposes alone.

"[T]he trial court has broad discretion in the admission and exclusion of evidence." *Brown v. Whitcomb*, 150 Vt. 106, 111, 550 A.2d 1, 4 (1988). A review of the record makes clear that plaintiff did not, in fact, establish his case for reliance by The Book Press or himself on the basis of the advertisements, and if the advertisements had been the sole evidence on that issue, we might well conclude the issue in defendant's favor. See *DeJesus v. Liberty Mutual Insurance Co.*, 423 Pa. 198, 200, 223 A.2d 849, 850 (1966) (where sole basis of claim was advertising by insured's workers' compensation carrier that it provided lossprevention service and safety counseling to policyholder, no duty was established to employee of insured). However, the disjunctive nature of § 324A does not require evidence to be relevant to all three of its subsections. The advertisements at the very least were relevant to the issue of whether there was an undertaking by the defendant (§ 324A(b)) by demonstrating what defendant declared publicly that it customarily undertook to do for policyholders and their employees, where arguably that public declaration was contrary to defendant's formal position at trial and to the testimony it presented in support of that

position. See *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d at 115, 199 N.E.2d at 794 (citations omitted), where the court said:

> As a general rule any statement, written or not, made by a party or in his behalf which is inconsistent with his present position may be introduced in evidence against him. Where the question has arisen, authorities are in accord that advertisements, brochures, newspaper items, catalogs, and the like are admissible and relative [sic] to the subject matter of the suit where they contain statements of a party inconsistent with a claim or a position asserted by such party in the action. In the present case the scope and purposes of the visits of defendant's safety engineers as alleged in its answer to the complaint were completely inconsistent with its representations in the advertisements. Under the rule stated above, the advertisements became relevant and material and were properly admitted into evidence.

See also *Smith v. Allendale Mutual Insurance Co.*, 410 Mich. 685, 719, 303 N.W.2d 702, 712 (1981) ("if the insurer's advertising or communications with its policyholders represent that its inspection services will relieve the insured of the burden of monitoring its own facilities, it . . . is subject to liability if it fails to exercise reasonable care in performing that undertaking") (footnote omitted). In the present case plaintiff adequately set forth a disparity between the position taken by defendant in its answer and at trial and the apparent posture of defendant as revealed in its advertisements. For example, plaintiff's exhibit 52 was a full-page print advertisement that appeared on March 20, 1978, in Forbes Magazine. It depicted a man in a suit and tie wearing a hard hat, with a building work site in the background. The headline at the top of the page stated:

> Help keep your workers safe, and that could help you save on Workers' Compensation.

The advertising copy below the headline stated:

> I'm a Liberty Mutual loss prevention specialist. And my specialty is helping companies control the Workers' Compensation Insurance costs by helping them control their losses.

I go into our policyholders' factories, out to their construction sites, into their offices.

The things I recommend and the changes our policyholders make can lower the risk of a loss. And lower losses lead to lower premiums.

All of which is good for your workers and good for you.

. . . .

[In smaller typeface] (The company reserves the right to determine the scope of its loss prevention service for each policyholder.)

Defendant's answer, its emphasis at trial on the lack of an express undertaking in the agreement with the insured, and the testimony it presented, all stressed the absence of any "undertaking." Plaintiff attempted to contrast defendant's stated position with evidence of more active and involved conduct on the part of its loss-prevention personnel, as reflected in letters, reports, and other documents sent to the insured. To the extent that the advertisements tended to demonstrate this disparity and confirm the existence of an undertaking in fact, it was open to the trial court to find the exhibits relevant and admissible.

Defendant also claims error in the refusal of the trial court to instruct the jury that the advertisement evidence be limited to impeachment of defendant's witnesses, and not allowed as evidence of an undertaking by defendant. The court properly refused the request. The issue the advertisements addressed was broader than the impeachment of witnesses. They addressed the substantive question of whether defendant's entire course of conduct represented an undertaking to conduct an active loss-prevention program at The Book Press, so that negligent performance of such undertaking might give rise to liability. In any case, the trial court was not obliged to limit the jury's consideration of the evidence to impeachment, but could allow it to be considered as evidence of the fact admitted. *Hall v. Royce*, 109 Vt. 99, 108, 192 A. 193, 196 (1937).

IV.

Finally, defendant argues that the trial court should have allowed evidence that it paid plaintiff's medical expense claim to cure an asserted erroneous impression "that the De-

fendant had not discharged its statutory obligation to the plaintiff to pay workmen's compensation benefits." Defendant contends, perhaps with merit, that no prejudice could possibly have resulted to plaintiff if the evidence had been admitted. But that is not grounds for appeal. Again, it is the trial court that must decide initially what evidence is relevant and admissible. See *Bradley v. Buck*, 131 Vt. 368, 371, 306 A.2d 98, 101 (1973). We do not agree with plaintiff that the evidence was properly barred under this Court's general admonition against bringing the jury's attention to the fact that an insurance company is a party defendant, *Bliss v. Moore*, 112 Vt. 185, 187, 22 A.2d 315, 316 (1941), since in the present case the jury was very well aware that Liberty Mutual was a defendant. But the relevance of the evidence was at most tangential, and the court acted well within its discretion to exclude it.

*Affirmed.*

**Peck, J.,** dissents without opinion.