Pamela J. PRATT, Plaintiff–Appellant,

v.

LIBERTY MUTUAL INSURANCE
COMPANY, Defendant–
Appellee.

No. 441, Docket 91–7691.

United States Court of Appeals,
Second Circuit.

Argued Nov. 21, 1991.

Decided Jan. 2, 1992.

Jesse M. Corum IV, Brattleboro, Vt.
(Gale, Gale & Corum, Thomas W. Costello,
Thomas W. Costello, P.C., of counsel), for
plaintiff-appellant.

**668**

Robert P. Gerety, White River Jct., Vt. (Plante, Hanley & Gerety, P.C., of counsel), for defendant-appellee.

Before PRATT, MAHONEY and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Plaintiff injured her back while working for the Cersosimo Lumber Company. She sued Cersosimo's workers' compensation carrier, Liberty Mutual Insurance Company, in the District Court for the District of Vermont (Billings, *C.J.*). She alleged that Liberty Mutual undertook to conduct an active loss-prevention program at Cersosimo's facilities, but that it discharged that duty negligently, thereby causing her injuries.

After plaintiff presented her case-in-chief, Liberty Mutual moved under Fed. R.Civ.P. 50(a) [1] for a directed verdict. The district court granted the motion and entered judgment for Liberty Mutual dismissing the complaint. Upon plaintiff's appeal, we vacated the judgment and remanded the case for reconsideration in light of the Vermont Supreme Court's intervening decision in *Derosia v. Liberty Mut. Ins. Co.*, 155 Vt. 178, 583 A.2d 881 (1990) [*"Derosia III"*]. *See Pratt v. Liberty Mut. Ins. Co.*, 923 F.2d 845 (2d Cir.1990). The district court reconsidered, but saw nothing in *Derosia III* requiring a different result. Accordingly, the district court reinstated its decision dismissing plaintiff's case. Pratt now appeals the district court's reinstatement of its decision. Because the district court misconstrued *Derosia III* and erroneously granted Liberty Mutual's motion for a directed verdict, we reverse and remand for a new trial.

## BACKGROUND

Cersosimo supplies wood products. Plaintiff Pratt worked at Cersosimo's Brattleboro, Vermont facility as a "manual materials handler," *i.e.*, she lifted lumber repeatedly from a pallet and loaded it on a conveyer belt. On November 5, 1986, she injured her back while lifting and she alleges that her injuries resulted from the cumulative effect of performing this repetitive, strenuous task. Pratt maintains that her injuries could have been avoided if Cersosimo had simply installed lift tables to facilitate this arduous exercise.

Liberty Mutual issued Cersosimo's workers' compensation insurance policy and is one of the largest underwriters of such insurance in the country. Liberty Mutual advertises its services in various media, including print, radio and television. One of the major themes of Liberty's campaign is its expertise in loss prevention. It boasts that it maintains a network of safety consultants and loss prevention representatives ("LPRs") who will assist its insureds in creating a safe workplace. This program inures to the benefit of both insured and insurer in the form of lower premiums and fewer claims.

Pratt alleged that Liberty Mutual's LPRs inspected Cersosimo's facilities several times in the five years preceding November 5, 1986, when she injured her back. During this period, Liberty Mutual's LPRs concluded that manual materials handling was a major source of injuries at Cersosimo's. Pratt alleges that Liberty Mutual should therefore have gone one step further by recommending to Cersosimo that it install lift tables to assist its manual materials handlers in the strenuous and repetitive lifting their jobs required. Had Liberty Mutual so recommended, and had Cersosimo complied with this advice, Pratt maintains that she would not have been injured.

Vermont's workers' compensation statute, of course, bars Pratt from bringing a tort action against Cersosimo for maintaining an unsafe workplace. *See* Vt. Stat.Ann. tit. 21, § 622 (1987). The statute, however, does not bar an employee from bringing a tort action against her employer's workers' compensation insurer. *See Derosia v. Duro Metal Prods. Co.*, 147 Vt. 410, 519 A.2d 601 (1986) [*"Derosia I"*].

---

**1.** Although Rule 50 was amended effective December 1, 1991, this case is not affected by the change.

Pratt brought such an action for negligent inspection against Liberty Mutual in Vermont state court.

After Liberty Mutual removed the case to the district court, the action came to trial in May 1990 before Judge Billings and a jury. At trial, Pratt sought to introduce into evidence samples of Liberty Mutual's advertising materials, arguing that they established the insurer's undertaking (1) to provide safety inspections of Cersosimo's facilities; (2) to make recommendations to Cersosimo for improving the safety of its facilities; and (3) to pursue those recommendations that were not thereafter implemented. Judge Billings, however, ruled that the materials would not be admitted unless Pratt could demonstrate specifically that she or Cersosimo relied on them. This she admittedly could not prove, and the advertisements were not admitted.

After Pratt concluded her case-in-chief, Liberty Mutual moved for a directed verdict. Holding that Pratt had failed to make out a *prima facie* case for negligent inspection, Judge Billings granted the motion and entered judgment for Liberty Mutual dismissing the complaint.

Pratt appealed to this court. While her appeal was pending, the Vermont Supreme Court decided *Derosia III*, explicitly adopting section 324A of the Restatement (Second) of Torts. We vacated the judgment of the district court and remanded the case for reconsideration in light of *Derosia III*. Holding, on remand, that Pratt "did not make out a prima facie case for negligent performance of [an] undertaking under section 324A or otherwise," Judge Billings reinstated his previous decision.

On this appeal, Pratt now contends that Judge Billings (1) erroneously excluded Liberty Mutual's advertisements and (2) misconstrued *Derosia III*. We agree and therefore reverse and remand for a new trial.

## DISCUSSION

We apply the law of Vermont in this diversity action and we begin with the Vermont Supreme Court's exposition in *Derosia III*.

*Derosia III*

Lyman Derosia cut his hand while operating a table saw on the job. He sued Liberty Mutual, his employer's workers' compensation carrier, alleging that it negligently conducted safety inspections of his employer's facilities by not insisting that the employer follow Liberty's recommendation that it use a safety blade guard on its table saws. Liberty Mutual moved for summary judgment, contending, first of all, that Vermont's workers' compensation statute barred such actions against a workers' compensation insurance carrier. That narrow issue was certified to the Vermont Supreme Court, which rejected Liberty Mutual's position and remanded the case for trial. *See Derosia I*, 147 Vt. at 413, 519 A.2d at 604.

At the trial, Derosia then introduced evidence that Liberty Mutual's LPRs had toured his employer's facilities and had made recommendations about specific safety problems at the plant where he was injured. Over Liberty Mutual's objections, the Vermont trial court permitted Derosia to introduce "samples of [Liberty Mutual]'s advertisements, internal procedures, and company creed" to establish that it undertook to conduct an active loss prevention program for Derosia's employer. *Derosia III*, 155 Vt. at 189, 583 A.2d at 887.

At the close of Derosia's case, Liberty Mutual moved for a directed verdict based on the plaintiff's failure to establish a duty or undertaking by Liberty Mutual to conduct safety inspections. The motion was denied, defendant presented its case, and the jury eventually returned a verdict for the plaintiff. The trial court denied Liberty Mutual's motion for judgment n.o.v. and the insurer appealed.

On appeal, the Vermont Supreme Court explicitly adopted Section 324A of the Restatement (Second) of Torts, which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to

the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965) ["Restatement"].

Liberty Mutual argued that Derosia had not proven an undertaking by Liberty Mutual to provide safety inspection services for Derosia or his employer. The Vermont Supreme Court rejected this argument, "disagree[ing] with defendant that there was no evidence from which the jury could reasonably have concluded that defendant undertook an obligation to provide a safe workplace, notwithstanding the statements in its written contract to the contrary." *Derosia III*, 155 Vt. at 186, 583 A.2d at 885.

Evidence of Liberty Mutual's undertaking included testimony that it regularly inspected the company's facilities; that it proffered and pursued specific safety recommendations; that the company relied on Liberty Mutual for safety and loss prevention advice; and that Liberty Mutual held itself out as providing comprehensive loss prevention expertise for its insureds. Proof of the latter was provided by Liberty Mutual's advertisements, introduction of which was proper to "address[ ] the substantive question of whether defendant's entire course of conduct represented an undertaking to conduct an active loss-prevention program [for Derosia's employer], so that negligent performance of such undertaking might give rise to liability." *Id.* at 191, 583 A.2d at 888.

With *Derosia III* as our blueprint, we turn to the issues raised on this appeal.

*Advertisement Evidence*

■ It is clear to us that in light of *Derosia III* the district court's exclusion of Liberty Mutual's advertisements was erroneous. The trial court excluded the advertisements because of Pratt's failure to demonstrate that either she or Cersosimo relied on the advertising. *Derosia III*, however, squarely rejected the argument that reliance by the employer or employee is required in all cases brought under section 324A of the Restatement; reliance is a prerequisite to liability only under subdivision (c) of section 324A. To quote *Derosia III:*

the disjunctive nature of § 324A does not require evidence to be relevant to all three of its subsections. The advertisements at the very least were relevant to the issue of whether there was an undertaking by the defendant (§ 324A(b)) by demonstrating what defendant declared publicly that it customarily undertook to do for policyholders and their employees. . . .

*Derosia III*, 155 Vt. at 189, 583 A.2d at 887; *accord Smith v. Allendale Mut. Ins. Co.*, 410 Mich. 685, 303 N.W.2d 702, 712 (1981) ("if the insurer's advertising or communications with its policyholders represent that its inspection services will relieve the insured of the burden of monitoring its own facilities, it . . . is subject to liability if it fails to exercise reasonable care in performing that undertaking") (passage quoted with approval in *Derosia III*, 155 Vt. at 190, 583 A.2d at 887); *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 199 N.E.2d 769, 776 (1964) (insurer's advertisements relevant to prove undertaking); *Brown v. Michigan Millers Mut. Ins. Co.*, 665 S.W.2d 630, 634 (Mo.Ct.App.1983) (same).

*Derosia III* similarly rejected Liberty Mutual's argument that the advertisements could be admitted solely for impeachment purposes:

The issue the advertisements addressed was broader than the impeachment of witnesses. They addressed the substantive question of whether defendant's entire course of conduct represented an undertaking to conduct an active loss-prevention program [for Derosia's employer], so that negligent performance of such undertaking might give rise to liability. In any case, the trial court was not obliged to limit the jury's consideration of the evidence to impeachment, but

could allow it to be considered as evidence of the fact admitted.

*Derosia III*, 155 Vt. at 191, 583 A.2d at 888. Thus, Liberty Mutual's advertisements should have been admitted to establish that it undertook to provide an active loss-prevention program at Cersosimo's facilities.

*Directed Verdict Ruling*

■■■ The standard for granting a directed verdict under Fed.R.Civ.P. 50(a), like that for determining a motion for judgment n.o.v., "is appropriately strict. A verdict may be directed under Rule 50 only if, 'without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir.1988) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)), *cert. denied*, 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989). We conclude that this standard was not met here, particularly in light of the district court's erroneous exclusion of the advertisement evidence. Taken together, the evidence Pratt presented at trial, and the exhibits she should have been permitted to introduce at trial, were sufficient to send the case to the jury under the principles of Restatement section 324A(b). *See Derosia III*, 155 Vt. at 188–89, 583 A.2d at 886–87; *Santillo v. Chambersburg Eng'g Co.*, 603 F.Supp. 211, 214 (E.D.Pa.1985), *aff'd*, 802 F.2d 448 (3d Cir.1986).

■■■ Whether a defendant in a negligence action owed a duty to use due care is usually a question of law for the court to determine. *See* 3 O. Gray, The Law of Torts 743 (2d ed. 1986). In cases under section 324A, however, the existence and scope of a defendant's duty depend on the nature and extent of its undertaking, and these, in turn, are questions of fact for the jury. *See, e.g., Derosia III*, 155 Vt. at 187, 583 A.2d at 886; *Santillo*, 603 F.Supp. at 214; *Hodge v. United States Fidelity & Guaranty Co.*, 539 So.2d 229, 231 (Ala. 1989). Viewing the evidence in the light most favorable to Pratt, and giving her the benefit of all reasonable inferences that may be drawn from the evidence, *see* 9 C.

Wright & A. Miller, Federal Practice and Procedure § 2524, at 543–45 (1971), a reasonable jury could conclude that Liberty Mutual undertook to conduct an active loss prevention program at Cersosimo. Thus, the directed verdict was improper.

In *Derosia III*, as here, Liberty Mutual's loss-prevention activities were substantial: it maintained a sophisticated loss-prevention department; its LPRs regularly inspected the insured's facilities; and it provided recommendations for improved safety in the workplace. Indeed, Pratt introduced into evidence internal training memoranda in which Liberty Mutual acknowledged an "obligation to offer real, tangible assistance by [its] Loss Prevention Department to every policyholder." Moreover, in both cases, there was evidence that the insured relied on Liberty Mutual for loss-prevention expertise. At trial, individuals who had been employed by Cersosimo and Liberty Mutual testified that Cersosimo relied to some degree on Liberty Mutual for its loss prevention expertise. Finally, in both *Derosia III* and this case, there was evidence that Liberty Mutual identified the very risk which ultimately manifested itself, resulting in plaintiffs' injuries.

Liberty Mutual also argues that the directed verdict was required because Pratt's evidence was not sufficient to establish that Liberty Mutual's conduct was a proximate cause of her injuries. We disagree. The Vermont Supreme Court summarily rejected the same claim in *Derosia III*: "[o]nce the jury decided that defendant had undertaken that duty, it was free to conclude that defendant had not performed the duty with reasonable care, resulting in physical harm to plaintiff." *Derosia III*, 155 Vt. at 188, 583 A.2d at 886. The issue is manifestly one for the jury.

## CONCLUSION

Pratt offered sufficient admissible evidence to withstand a directed verdict and permit the jury to consider her claims. Accordingly, the judgment of the district

court is reversed and the case is remanded for a new trial.