# Gary Cronin v. State of Vermont, Martha Kitchel and Lee Marasco

[531 A.2d 929]

No. 85-056

Present: **Hill, Peck, Gibson\* and Hayes,\* JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed July 17, 1987

---

\* Justices Gibson and Hayes were present for oral argument, but did not participate in this decision.

*Thomas F. Heilmann, P.C.*, Burlington, for Plaintiff-Appellant.

*Robert R. McKearin* of *Dinse, Erdmann & Clapp*, Burlington, and *Samuel E. Johnson*, Assistant Attorney General, Montpelier, for Defendants-Appellees.

**Hill J.** This is an appeal from the dismissal of a multi-count tort action brought by a state employee against the State of Vermont and two state employees for acts performed within the scope of their employment. We affirm.

Viewing the pleaded facts and other available evidence in the light most favorable to the nonmoving party, *Berlin Development Associates* v. *Department of Social Welfare*, 142 Vt. 107, 111, 453 A.2d 397, 399 (1982), the pertinent facts are as follows. At the time of defendants' alleged tortious conduct, plaintiff was employed by the State of Vermont in the St. Albans office of the Department of Social Welfare. Defendant Lee Marasco was also a state employee whose work included involvement with the Employee Assistance Program, a program designed to help state employees whose personal problems may affect adversely their work performance. In August, 1981, Marasco was contacted by plaintiff's brother-in-law, and told that plaintiff was having personal problems affecting his job. Marasco then contacted defendant Martha Kitchel, who was Chief of Field Operations for the department in which plaintiff worked. In response to Marasco's inquiries, Kitchel told Marasco that plaintiff's job was not jeopardized by personal problems, but that according to an office rumor, plaintiff was having an affair with a female co-worker. Marasco then passed this information along to plaintiff's brother-in-law, who in turn told plaintiff's wife. This lawsuit followed.

Plaintiff filed a six-count complaint against Marasco, Kitchel, and the State of Vermont. Count I alleged that, while in the scope of their employment, defendants Marasco and Kitchel negligently disclosed information about plaintiff in violation of a regulation of the Department of Personnel prohibiting disclosure of "confidential information" gained by reason of one's employment. Count II alleged that the State of Vermont negligently failed to enforce adequately this regulation. Count III alleged that the State failed to investigate adequately the allegations contained in the complaint, and that it misrepresented and concealed the results of the investigation that was conducted. Counts IV and V

alleged slander per se and slander against all defendants arising out of the disclosure. Count VI alleged unlawful interference with plaintiff's marriage and mental distress.

The defendants filed a motion to dismiss pursuant to V.R.C.P. 12(b), and on December 17, 1983, the superior court granted the motion with respect to Counts III-VI. Counts III and VI were dismissed for failure to state a claim upon which relief could be granted. Counts IV and V were dismissed on the basis of sovereign immunity.

Defendants later filed a motion for summary judgment on the remaining counts pursuant to V.R.C.P. 56. The court granted the motion, concluding that plaintiff's complaint failed to set out a cause of action for violation of § 3.016 of the Rules and Regulations of Personnel Administration.

Plaintiff has appealed the dismissal of all six counts. We address each claim in the order presented in the complaint.

Counts I and II are negligence claims against the State and the two individual defendants for actions taken within the scope of their employment. Both Counts allege breach of a duty imposed by § 3.016 of the Department of Personnel's Rules and Regulations for Personnel Administration. Section 3.016 provides, in pertinent part:

> An employee shall not disclose confidential information gained by him by reason of his official position except as authorized or required by law . . . .

Since plaintiff did not allege breach of any common law duty of nondisclosure, and since no right of action is provided by statute for violation of § 3.016, Counts I and II can avoid dismissal only if § 3.016 creates an implied private right of action.

■ Even if we assume, without deciding, that the defendants' conduct violated § 3.016,[1] the violation of a statute or regulation

---

[1] The trial court dismissed Counts I and II on the basis of its conclusion that the disclosure of information complained of was not a disclosure of "confidential information." In the court's view, the information disclosed was a rumor only, leading it to the conclusion that § 3.016 had not been violated. We need not decide whether defendants' disclosure of information violated the rule, however, because of our holding that § 3.016 does not create a private cause of action. See *Circus Studios, Ltd.* v. *Tufo*, 145 Vt. 219, 222, 485 A.2d 1261, 1263 (1984) (Supreme Court will affirm correct judgment even if grounds stated in support of judgment are erroneous.).

does not in and of itself give rise to a private right of action for damages. See *Wilder* v. *Aetna Life & Casualty Insurance Co.*, 140 Vt. 16, 19, 433 A.2d 309, 310 (1981). In this case, the scope of the regulation, combined with the existence of an administrative remedy for violation of the regulation, convinces us that no private right of action is created by the regulation.

■ On its face, § 3.016 prohibits the disclosure of a broad range of information obtained from any source by any state employee subject to the regulation. Thus, the very scope of the regulation contradicts plaintiff's argument that it was promulgated for his special benefit,[2] leading us to the conclusion that the regulation does not create a duty running from defendants to plaintiff. See *Shelton* v. *Industrial Commission*, 51 Ohio App. 2d 125, 130-31, 367 N.E.2d 51, 54 (1976) ("Statutes requiring state agencies to inspect and enforce safety standards were enacted to protect the public generally against unsafe conditions . . .," and do not "create a duty toward any particular person.").

Furthermore, a private right of action for violation of § 3.016 would potentially frustrate the legislative scheme for the enforcement of personnel rules and regulations. Under 3 V.S.A. § 315, the Commissioner of Personnel is authorized to "institute and maintain any action or proceeding to secure compliance with" § 3.016. Section 315 contemplates that the decision with respect to the manner in which violations of personnel regulations should be remedied should be within the discretion of the Commissioner of Personnel. A private right of action would potentially interfere with the exercise of this discretion. Counts I and II were properly dismissed.

Count III was dismissed by the court for failure to state a claim upon which relief could be granted. Plaintiff has not pointed to any legal authority for a duty on the part of the State running to plaintiff to investigate the allegations contained in the complaint, or a duty to disclose to plaintiff the results of an investigation if one is made. Since no duty was owed, Count III was properly dismissed. See *Guilmette* v. *Alexander*, 128 Vt. 116, 117, 259 A.2d 12, 13 (1969).

---

[2] See *Cort* v. *Ash*, 422 U.S. 66, 78 (1975) (one of the relevant factors in determining whether a statute creates a private right of action is whether plaintiff is " 'one of the class for whose *especial* benefit the statute was enacted . . . .' ") (quoting *Texas & Pacific Ry.* v. *Rigsby*, 241 U.S. 33, 39 (1916)).

Counts IV and V alleged slander and slander per se and were dismissed by the court on the basis of sovereign immunity. The court concluded that *Lomberg* v. *Crowley*, 138 Vt. 420, 415 A.2d 1324 (1980), controlled the immunity issue,[3] and that the State and its employees acting within the scope of their employment were immune from suit under 12 V.S.A. § 5602(6).[4] Plaintiff does not contest the applicability of *Lomberg* to the immunity issue, but instead argues, relying on *Stoneman* v. *Vergennes Union High School District #5*, 139 Vt. 50, 421 A.2d 1307 (1980), that the State and its employees acting within the scope of their employment are immune only with respect to governmental functions, as opposed to proprietary functions. Since, according to plaintiff, the disclosure was the product of a proprietary function, there is no immunity.[5]

Some language in the *Stoneman* decision arguably supports plaintiff's argument. The *Stoneman* Court described the State's sovereign immunity this way: "An action against the state cannot be maintained without the state's consent for injuries resulting from the exercise of essentially governmental functions, as opposed to proprietary functions." *Id.* at 53, 421 A.2d at 1309. A close examination of the *Stoneman* case, however, leads us to conclude that its *ratio decidendi* does not support plaintiff's argument.

The immunity question in *Stoneman* arose out of a counterclaim against a state agency to recover tuition costs incurred by two local school districts for students in the charge of the state agency. *Id.* at 52, 421 A.2d at 1309. The Court held that the activ-

---

[3] *Lomberg* held that the areas of sovereign immunity preserved by 12 V.S.A. § 5602 were not destroyed by the general waiver of sovereign immunity to the extent of insurance contained in 29 V.S.A. § 1403. *Lomberg*, 138 Vt. at 423-24, 415 A.2d at 1326. Subsequent to the decision in *Lomberg*, however, the Legislature amended 29 V.S.A. § 1403 to expressly overrule *Lomberg* and make the § 1403 waiver controlling. 1981, No. 213 (Adj. Sess.), § 1 (effective July 1, 1982). The conduct underlying plaintiff's complaint took place in the fall of 1981. Since the 1982 amendment to § 1403 could not apply retroactively to this conduct, 1 V.S.A. § 214(b)(4), the trial court correctly concluded that *Lomberg* was the controlling law.

[4] 12 V.S.A. § 5602(6) provides, in pertinent part, that the waiver of sovereign immunity contained in 12 V.S.A. § 5601 does not apply to "[a]ny claim arising out of alleged . . . slander . . . ."

[5] Plaintiff also argues that this Court should abolish the doctrine of sovereign immunity. We decline to take this action now for the same reasons we refused to do so in *Lomberg*, 138 Vt. at 424, 415 A.2d at 1327.

ity for which the counterclaimants sought recompense "constituted an act of the sovereign," *id.* at 54, 421 A.2d at 1310, barring the claim on the basis of sovereign immunity. It was thus unnecessary for the Court, in reaching its decision, to discuss the government/proprietary distinction.

Furthermore, the argument that the government/proprietary distinction applies to questions of the sovereign immunity of the State is inconsistent with our prior decisions. *Marshall* v. *Town of Brattleboro*, 121 Vt. 417, 160 A.2d 762 (1960), makes clear that the government/proprietary distinction is a principle which relates to questions of municipal immunity, not the sovereign immunity of the State. The Court recognized in *Marshall* that the need to distinguish between governmental and proprietary functions is a product of the fact that municipalities exercise two different types of authority: "public duties imposed upon municipalities by their charter which they are required to perform for the State, and certain powers given in the charter for the purpose of realizing benefits to the inhabitants of the village itself." *Id.* at 421-22, 160 A.2d at 765. The Court rationalized the attachment of immunity to the former but not the latter actions this way:

> For the purpose of public duties the municipalities are merely convenient instrumentalities of the State, and no private right of action for negligent acts in connection with these duties arises unless given by statute. The powers given in the charter for the benefit of the municipality are proprietary in nature and carry with them the obligation to exercise the power so as to work no unnecessary injury to persons or property, and to exercise ordinary care and skill in construction.

*Id.* at 422, 160 A.2d at 765.

■ Unlike the case with municipalities, the acts of the State and its employees acting within the scope of their employment are always the acts of the sovereign. Accordingly, sovereign immunity attaches to all actions of the State and its employees acting within the scope of their employment. *Austin* v. *Mayor of Baltimore*, 286 Md. 51, 53, 405 A.2d 255, 256 (1979); *O & B, Inc.* v. *Maryland-National Capital Park & Planning Commission*, 279 Md. 459, 461-62, 369 A.2d 553, 554 (1977). To the extent it is inconsistent with this holding, *Stoneman* is hereby overruled. The court correctly dismissed Counts IV and V.

■ Count VI, which alleged interference with plaintiff's marriage, was dismissed by the court for failure to state a claim upon which relief can be granted. In dismissing this claim, the court relied on 15 V.S.A. § 1001, which provides, in pertinent part:

> The rights of action to recover sums of money as damages for alienation of affections . . . are abolished. No act done within this state shall operate to give rise . . . to any such right of action.

15 V.S.A. § 1001. Notwithstanding plaintiff's attempt to characterize his claim as outside the scope of the operation of § 1001, we conclude that the statutory language is broad enough to encompass his claim, thereby barring any recovery under Count VI.

*Affirmed.*