### Rita Corbin, Administratix of Estate of Michael M. McGuire v. Leonard B. and Mary Lou Buchanan, Brattleboro Housing Authority, Town of Brattleboro

[657 A.2d 170]

No. 89-118

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ.**

Opinion Filed October 28, 1994

Motion for Reargument Denied January 5, 1995

*William M. McCarty* and *Bruce Hesselbach* of *McCarty Law Offices*, Brattleboro, for Plaintiff-Appellee.

*Allan R. Keyes, Martha M. Smyrski* and *John A. Serafino* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellant Town of Brattleboro.

*Deborah L. Markowitz*, Montpelier, for Amicus Curiae Vermont League of Cities and Towns.

**Gibson, J.** In a wrongful death action, defendant Town of Brattleboro appeals from a jury verdict in favor of decedent's estate for compensatory and punitive damages arising out of the Town's

alleged failure to properly inspect premises where decedent was killed in a fire. Plaintiff cross-appeals on the issue of the allocation of damages. We reverse.

In 1986, a third-floor apartment in Brattleboro inhabited by a seven-year-old boy and his father was destroyed by a fire that was apparently started by a cigarette dropped by the father's girlfriend. No smoke detectors had been installed in the apartment, either by the tenant or the landlord. The father escaped with injuries, but his son died from smoke inhalation.

In 1984, the Town adopted the BOCA Building and Fire Prevention Codes, which include provisions requiring the inspection of buildings and the enforcement of orders to correct dangerous conditions. The Town did not conduct regular inspections of existing buildings, but enforced the codes in response to complaints or as part of the process of granting new building permits. Shortly after the adoption of the BOCA codes, a Town employee inspected the first-floor apartment of the building in question for wiring, plumbing and sewer problems. He noticed that there was no smoke detector in the apartment, but limited his investigation to the scope of the specific complaints. According to the evidence, no complaints were received from other tenants, and no inspection of other apartments in the building was ever conducted.

Steven McGuire and the child's grandmother, Rita Corbin, on behalf of the estate of her grandson, sued the landlord, the Town, and the Brattleboro Housing Authority, which subsidized the rents for the units. The landlord and the Housing Authority settled the case before trial. The Town moved for summary judgment, arguing that the Town's failure to enforce the BOCA codes created no private right of action on behalf of plaintiffs. The court denied the Town's motion for summary judgment, ruling that local ordinances created a duty to individual members of the public and that the violation of the local ordinance was a prima facie showing of negligence. The court also submitted the issue of punitive damages to the jury on grounds that a finding that the Town was grossly negligent would be sufficient for the award of such damages. The jury awarded compensatory and punitive damages, and the present appeal followed.

The central issue on appeal is whether an individual plaintiff may recover in tort against a municipality for its failure to enforce an ordinance whose purpose is protection of the public as a whole. We hold that no such action exists in Vermont under the applicable statute or common law.

First, we note the absence in Vermont of any general inference of a private action based on government regulations whose clear purpose is the general welfare. We reaffirmed this principle in *Cronin v. State*, 148 Vt. 252, 531 A.2d 929 (1987), *overruled on other grounds by Libercent v. Aldrich*, 149 Vt. 76, 539 A.2d 981 (1987), wherein a state employee sued the State and two of its employees for violation of a state personnel department regulation prohibiting disclosure of confidential information. We held:

> Even if we assume, without deciding, that the defendants' conduct violated [the regulation], *the violation of a statute or regulation does not in and of itself give rise to a private right of action for damages.* . . . In this case, the scope of the regulation, combined with the existence of an administrative remedy for violation of the regulation, convinces us that no private right of action is created by the regulation.

> On its face, [the regulation] prohibits the disclosure of a broad range of information obtained from any source by any state employee subject to the regulation. Thus, *the very scope of the regulation contradicts plaintiff's argument that it was promulgated for his special benefit, leading us to the conclusion that the regulation does not create a duty running from defendants to plaintiff.*

*Id.* at 254-55, 531 A.2d at 931 (emphasis added) (footnotes omitted) (citations omitted). Though *Cronin* involved a state regulation and state defendants, its lesson is equally applicable to the municipal setting – that no private cause of action exists in Vermont for failure to enforce a regulation adopted to protect the public at large. See also *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 489, 622 A.2d 495, 499-500 (1993) (any duty of Department of Banking and Insurance to investigate insurance agents runs to general public, not to any class of insurers).*

The same rule has been adopted by most jurisdictions considering the question. See, e.g., *Rich v. City of Mobile*, 410 So. 2d 385, 387 (Ala. 1982) (no municipal liability for failure to inspect sewers that backed up, causing damage); *Leger v. Kelley*, 116 A.2d 429, 432 (Conn. 1955) (motor vehicle commissioner's duty to approve car registration only if

---

* *Hudson v. Town of East Montpelier*, 161 Vt. 168, 638 A.2d 561 (1993), cited by plaintiffs, dealt with the doctrine of qualified official immunity, not the pertinent issue here – whether in the first instance the duty of inspection created individual rights, or ran generally to the public.

car equipped with safety glass is duty to general public and does not create a private right of action for damages resulting from commissioner's alleged breach of that duty); *Trianon Park Condominium Ass'n v. City of Hialeah*, 468 So. 2d 912, 922 (Fla. 1985) (city not liable in tort for failure to inspect condominium, which suffered severe roof leakage); *Hage v. Stade*, 304 N.W.2d 283, 285 (Minn. 1981) (no cause of action for state's failure to enforce proper safety measures at hotel); *O'Connor v. City of New York*, 447 N.E.2d 33, 34-35, 460 N.Y.S.2d 485, 486-87 (1983) (absent special relationship creating duty of care for benefit of particular class, city not liable for inspector's failure to discover gas leak that caused explosion); *Barratt v. Burlingham*, 492 A.2d 1219, 1222 (R.I. 1985) (DUI enforcement is intended to protect general public, and enforcement failure does not result in private action against state); *Georges v. Tudor*, 556 P.2d 564, 566-67 (Wash. Ct. App. 1976) (no cause of action against city resulted from allegedly negligent building inspection, absent special relationship between city and individual).

In *Trianon Park Condominium Ass'n*, plaintiff property owners brought suit against a municipality for its failure to discover building code violations in the roof of their condominium building. Plaintiffs claimed that a state statute requiring municipalities to adopt and enforce building codes created a duty of care toward the individual residents of the city. The court disagreed, holding that there was no common-law duty to individual citizens for the enforcement of municipal codes, citing comment (b) of the Restatement (Second) of Torts § 288 (1965), which states:

> Many legislative enactments and regulations are intended only for the protection of the interests of the community as such, or of the public at large, rather than for the protection of any individual or class of persons. Such provisions create an obligation only to the state, or to some subdivision of the state, such as a municipal corporation. The standard of conduct required by such legislation or regulation will therefore not be adopted by the court as the standard of a reasonable man in a negligence action brought by the individual.

468 So. 2d at 917 n.3. The court also reviewed the legislative provisions and found that because the language of those provisions did not expressly create a private cause of action, no such cause of action would be implied. Further, the court stated:

> To hold a governmental entity liable for carrying out this type of enforcement activity would make the taxpayers of the enforcing

governmental entity insurers of all building construction within the jurisdiction of the entity. We conclude that such a result was never intended by either the legislature or the city in enacting the building code provisions.

*Id.* at 915.

 Nor was such a result intended by the Vermont Legislature. The Town adopted the BOCA codes pursuant to 24 V.S.A. chapter 123, the language of which makes clear that the legislative intent is to provide for the health and safety of the general public:

§ 5001. Legislative findings

The general assembly finds:

(1) There exist in the various municipalities numerous dwellings and dwelling premises which are substandard due to dilapidation, deterioration and disrepair, structural defects, uncleanliness, lack of adequate ventilation, light, sanitary, heating and hot water facilities, overcrowding of dwellings, occupancy of unfit dwellings and other conditions and defects which increase the hazards of illness, disease, fire, accidents and other calamities;

(2) These conditions, singly or in combination, endanger the health, safety, morals and general welfare of the people of the various municipalities and give impetus to the development, continuation, extension and aggravation of blighted and substandard housing conditions;

(3) The establishment and maintenance of minimum standards for dwellings is necessary to the protection of the public health, safety, morals and general welfare.

Section 5005 provides an administrative remedy for violation of any ordinance enacted under the chapter, but nowhere in chapter 123 is there any suggestion that the General Assembly intended to create a private civil remedy. The social, fiscal, tax, and public policy implications of a statute creating a private right of action based on a town's adoption of building code regulations would be enormous, and there is no indication in this record that the Legislature contemplated any such consequences.

 If allowed under its charter, the Town itself might have created a private right of action, but again the words of the ordinance adopting the codes imply no such intention. The ordinance, incorpo-

rating § F-100.2 of the BOCA Fire Prevention Code, expressly states that its purpose is to provide for the safety of the public at large, and in incorporating § F-102.6, it expressly prohibits a private cause of action against the Town.

In denying the Town's directed verdict motion, the trial court concluded that the ordinance's negation of any private remedy violated public policy. But the court does not explain its rationale. The Town's explicit bar to private actions would violate public policy only if it contravened supervening Vermont law, such as a constitutional or statutory mandate, or a common-law holding that such a right exists and cannot be limited by municipal fiat. But as we have already concluded that there is no such controlling Vermont law, there is no public policy that the Town ordinance contravenes. As we have stated, the enabling statute is limited to broad, public purposes and is not consistent with the inference of a private action. The common law does not allow conversion of the general municipal duty of inspection into a private right of action.

Plaintiffs argued at trial that the Town's "affirmative conduct" removed it from the protection of any general rule that a broad duty to enforce the law does not create private rights, citing *My Sister's Place v. City of Burlington*, 139 Vt. 602, 433 A.2d 275 (1981). In that case, however, the plaintiff began renovation of a building after a city fire inspector erroneously advised that specific improvements would meet fire code requirements. We affirmed the trial court's ruling that the city was estopped from disclaiming liability, based on its employee's indisputable negligence in erroneously advising a particular member of the public about the fire code and inducing reasonable reliance on that advice. *Id.* at 609-10, 433 A.2d at 279-80. *My Sister's Place* falls far short of holding that a general duty to enforce local codes creates a private cause of action.

In the case at bar, the issuance of a certificate of occupancy to the building in which the apartment in question was located neither induced reliance on the part of any tenant that the Town warranted the building to be safe from fire, nor was the inspection of another apartment in the building "affirmative conduct" as to the apartment in which decedent died.

Finally, the rent control agreement between the Town and a building owner did not create a "close relationship" between the Town and plaintiffs. The agreement had to do principally with rent levels,

and there is no merit in plaintiffs' contention at trial that, having undertaken affirmative acts, the Town owed a duty to plaintiffs to undertake further reasonable acts, namely to conduct safety inspections of the apartment.

In light of our decision, we need not address the other issues raised by the Town or the issues on the cross-appeal.

*Reversed.*