### Florin and Juanita Andrew v. State of Vermont

[682 A.2d 1387]

No. 95-301

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 28, 1996

*Jesse M. Corum, IV* of *Gale, Corum & Stern*, and *Thomas W. Costello* and *Joel T. Faxon* of *Costello & Mabie*, Brattleboro, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, and *Timothy B. Tomasi*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Allen, C.J.** In this appeal we consider whether the State is immune from a tort suit claiming damages for injuries resulting from an allegedly negligent inspection of a private workplace pursuant to the Vermont Occupational Safety and Health Act (VOSHA), 21 V.S.A. §§ 201-264. We conclude that the State is immune from the suit because plaintiffs, an injured employee and his wife, have failed to show that a private analog exists for the State's regulatory enforcement activities. Accordingly, we affirm the superior court's grant of summary judgment in favor of the State.

We view the facts as alleged by plaintiffs. See *Peters v. Mindell*, 159 Vt. 424, 426, 620 A.2d 1268, 1269 (1992) (if supported by affidavits or other evidence, all allegations made in opposition to summary judgment are regarded as true). On February 26, 1992, Florin Andrew, an employee of Fulflex of Vermont, Inc., was injured while working on a calendar machine at his workplace. The calendar machine is designed to flatten raw, hot rubber into a wide, thin layer by running it through a series of calendar rolls. Andrew was injured when his arm was pulled into an unguarded nip point on one of the rolls.

Two other employees, one in 1983 and the other in 1989, had been injured at the same nip point while working on the same machine. VOSHA inspections took place at Fulflex on December 5, 1984 and July 20-21, 1987. During the latter inspection, the state inspector examined every machine, including the calendar machine on which Andrew was injured. The inspector issued two citations for VOSHA

violations with respect to that machine, but did not issue a citation for the unguarded nip point, a conspicuous hazard that violated an OSHA regulation.

In November 1992, Andrew and his wife filed suit against (1) the State, for undertaking and negligently performing the safety inspections; (2) the company that modified and assembled the calendar machine, for breach of warranty, negligence, and failure to warn of an unreasonably dangerous condition; (3) Andrew's employer and his employer's insurer, for failing to discover and remedy the machine's safety hazards; and (4) two of Andrew's co-workers, for negligence in failing to reduce or eliminate the unreasonable risk of harm posed by the machine. By agreement of the parties, the claims against all of the defendants except the State were dismissed. The State moved for summary judgment on the ground that the suit was barred by the doctrine of sovereign immunity. The superior court granted the motion, rejecting plaintiffs' contention that the State was liable under the Restatement (Second) of Torts § 324A (1965) for its allegedly negligent inspection of Andrew's workplace. The court ruled that Restatement § 324A was inapplicable because, by conducting regulatory VOSHA inspections, the State did not assume Fulflex's duty of providing a safe workplace.

On appeal, plaintiffs argue that there is a genuine issue of material fact as to (1) whether the State undertook to render services to Fulflex or Andrew by conducting the inspections, and (2) whether Fulflex or Andrew relied on that undertaking. In their reply brief, plaintiffs contend that it would be inappropriate for this Court to consider the issue of sovereign immunity because the superior court did not address that issue. They request that we remand the matter for the superior court to consider the issue in light of our recent decision in *Sabia v. State*, 164 Vt. 293, 308, 669 A.2d 1187, 1197 (1995), where we found a private analog for the State's statutory duty to render assistance in response to particularized and substantiated claims of child abuse.

At the outset, we reject plaintiffs' request that we remand this matter for the superior court to determine whether the State has waived sovereign immunity. One of the grounds for the State's request for summary judgment was that the State had not waived its immunity under 12 V.S.A. § 5601(a) because the Good Samaritan doctrine, as set forth in Restatement § 324A, does not provide a private analog for VOSHA inspections. Indeed, this was the central issue contested before the superior court, though the court did not

frame its decision in terms of sovereign immunity. The court's implicit ruling, however, was that the State had not waived sovereign immunity and thus was entitled to summary judgment because there is no private analog for plaintiffs' claims. Further, assuming *Sabia* is relevant to this case, we need only review the superior court's ruling in light of *Sabia* rather than remand the matter for the court to reexamine the legal issue anew.

We now turn to the substantive issue at hand. Under 12 V.S.A. § 5601(a), the State is liable for injuries caused by the negligent conduct of its employees acting within the scope of their employment "under the same circumstances, in the same manner and to the same extent as a private person would be liable." Thus, the State retains its immunity "for governmental functions for which no private analog exists," *LaShay v. Department of Social & Rehabilitation Servs.*, 160 Vt. 60, 68, 625 A.2d 224, 229 (1993), and waives its immunity only to the extent a plaintiff's cause of action is comparable to a recognized cause of action against a private entity. *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 486, 622 A.2d 495, 498 (1993).

In *Denis Bail Bonds*, a corporation engaged in the issuance of bail bonds alleged that the Vermont Department of Banking and Insurance was liable for its negligence in failing to inform the corporation of complaints of wrongdoing that had been filed against the corporation's agent. To determine if the negligence claim had a legitimate private analog, we considered whether the statute governing the department's supervision of insurance carriers created a duty requiring the department to notify the corporation of the complaints. *Id.* at 488-89, 622 A.2d at 499-500. After noting that the existence of a duty is primarily a question of law involving policy considerations, *id.* at 487, 622 A.2d at 499, we concluded that the State owed no duty to the corporation because the statutory scheme set forth to regulate insurance companies was for the protection of the public in general and did not create a duty toward the bail bond corporation. *Id.* at 488-89, 622 A.2d at 499-500.

In *Sabia*, we considered whether variants of the Good Samaritan doctrine found in related Restatement sections served as a private analog to the plaintiffs' allegation that SRS failed to render assistance to them, as mandated by statute, after receiving substantiated complaints that they had been sexually abused. We concluded that (1) the relevant statute imposed a mandatory duty on SRS to investigate claims of abuse and to provide substantive assistance to those whose claims of abuse were substantiated, and (2) the statutory duty was

comparable to the duty imposed by the Good Samaritan doctrine. *Sabia*, 164 Vt. at 298-306, 669 A.2d at 1191-96.

Here, plaintiffs contend that VOSHA's authorization of state inspections of private workplaces creates a duty that is analogous to the duty imposed upon private parties under Restatement § 324A, which provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Section 324A requires not only a threshold showing that there was an undertaking to render services for another to protect a third party, but also a showing that the undertaking increased the risk of harm, or the party undertaking to perform services has assumed the other's duty to the third party or caused the third party to rely on the undertaking.

In support of their argument that Restatement § 324A creates a private analog for their claim against the State, plaintiffs assert that the State may be liable for injuries caused by negligent VOSHA inspections, just as a private workers' compensation insurer may be liable for its failure to inspect, or negligent inspection of, its insured's workplace. See *Derosia v. Liberty Mut. Ins. Co.*, 155 Vt. 178, 183-87, 583 A.2d 881, 883-86 (1990) (private insurance carrier may be liable under § 324A for failure to inspect employer's workplace if insurer undertook to render specific service necessary for protection of employees and thereby induced reliance or insurer's lack of reasonable care increased risk of harm). We reject this comparison, and conclude that, as a matter of law under the facts and circumstances of this case, VOSHA's regulatory enforcement scheme is not an undertaking of services to employers or their workers, and thus does not

create a duty that establishes a private analog under Restatement § 324A.

We first examine the VOSHA statutory scheme. The policy behind the statute is that "all persons shall be provided *by their employers* with safe and healthful working conditions at their work place." 21 V.S.A. § 201(a) (emphasis added). To further that policy goal, the Department of Labor and Industry is given the regulatory task of administering and enforcing VOSHA provisions. *Id.* § 201(c). Nothing in the statute, however, "is intended to relieve the employer of [its] general responsibility of obtaining employee compliance with the Act's requirements." *Green Mountain Power Corp. v. Commissioner of Labor & Indus.*, 136 Vt. 15, 28, 383 A.2d 1046, 1053 (1978). Indeed, the statute explicitly mandates that each "employer" (1) "shall" provide a workplace free from recognized hazards, and (2) "shall" comply with all of the safety and health standards promulgated under the VOSHA code. 21 V.S.A. § 223.

Under the statute, the Commissioner of Labor and Industry, the Director of Occupational Health, or their agents "may" enter private business premises at reasonable times without warning and conduct reasonable inspections to determine whether there has been compliance with the VOSHA code. *Id.* § 206(a). In conjunction with a VOSHA inspection, the commissioner or director may require the employer or other witnesses to testify or produce evidence. *Id.* § 206(b). If, upon an inspection or investigation, the commissioner, the director, or an agent of either of them finds that an employer has violated the VOSHA code, a citation must be issued with reasonable promptness. *Id.* § 225(a). Further, whenever the commissioner finds that a VOSHA code violation creates a dangerous condition that could reasonably be expected to cause death or serious physical harm, the commissioner "may" order the workplace to be closed down or take other steps to correct or remove the imminent danger. *Id.* § 208(a). The Occupational Safety and Health Review Board reviews the issuance of citations and imposes civil penalties for violations of the VOSHA code. *Id.* § 210. A person aggrieved by an order or action of the commissioner or the board may appeal the order or action to the superior court. *Id.* §§ 209, 227.

In sum, under the statute, the employer retains primary responsibility for ensuring the safety of the workplace. In contrast, the State is given a regulatory enforcement role; its relationship with the employer is often adversarial. When the State inspects private businesses, it does so to police the employer's compliance with the law

and to punish those employers that have not complied with the law, not to render services to the employer by assuming the employer's duty toward its employees.

Unlike the situation involving a workplace inspection performed by a private workers' compensation insurer, a state VOSHA inspection does not involve a consensual or contractual relationship between the inspector and the employer. In *Derosia*, the insurer that inspected its insured's workplace was subject to liability under Restatement § 324A because it had voluntarily assumed the duty of ensuring the safety of the workplace. See *Derosia*, 155 Vt. at 187, 583 A.2d at 886 (employer lacked safety expertise and insurer offered to fill that gap). In contrast, the relationship between the State and the employer, as defined in VOSHA, refutes any suggestion that the State has undertaken the employer's duty to provide a safe workplace. See *Mercer v. United States*, 460 F. Supp. 329, 332 (S.D. Ohio 1978) (statutory inspection responsibilities imposed on government to police employer's compliance with safety regulations are "altogether different" from when private entity contracts with another to perform inspections to ensure safety of workplace). Like the statute in *Denis Bail Bonds*, VOSHA is a regulatory enforcement act aimed at protecting the safety and health of the public in general, not an undertaking of the employer's duty to its employees. See *Shelton v. Industrial Comm'n*, 367 N.E.2d 51, 54 (Ohio Ct. App. 1976) (statutes mandating inspection and enforcement of safety statutes are for benefit of general public and do not create duty toward any particular person); cf. *Corbin v. Buchanan*, 163 Vt. 141, 143-47, 657 A.2d 170, 172-74 (1994) (state statutes and city ordinances requiring inspection of buildings for safety code violations are aimed at general public and do not create private right of action against municipality).

A majority of federal courts have determined that inspection duties imposed by regulatory enforcement statutes like OSHA and the Mine Safety and Health Act (MSHA) do not create an actionable duty owed by the United States under the Federal Tort Claims Act, upon which the Vermont Tort Claims Act is modeled. See *Carroll v. United States*, 488 F. Supp. 757, 759 (D. Idaho 1980) (majority of courts have concluded that federal regulatory enforcement activities do not give rise to actionable tort duty under FTCA). Many courts that have considered an alleged private analog comparing the government's statutory authorization to inspect workplaces with the Good Samaritan doctrine as set forth in Restatement § 324A have held that § 324A's threshold requirement is not met because the government

has not undertaken to provide services to the employer. See, e.g., *Roberson v. United States*, 382 F.2d 714, 721 (9th Cir. 1967) (in conducting its safety inspection program, government was not undertaking to render services to contractor; government's safety inspection activities were designed to ensure that contractor performed its duties, not to relieve contractor of those duties); *Taylor v. United States*, 521 F. Supp. 185, 188-89 (W.D. Ky. 1981) (MSHA provisions requiring safety inspections of mines do not create duty analogous to undertaking to render services as contemplated by § 324A; under express language of MSHA, primary and ultimate obligation of compliance with safety regulations rests with mine operator); *Mercer*, 460 F. Supp. at 332 (statutory governmental inspection of mine to regulate employer's compliance with safety regulations is not service rendered to mine operator).

Moreover, the majority of those courts that have presumed an undertaking of services and examined the three subcomponents of Restatement § 324A have nonetheless concluded that the government is generally not liable for its undertaking of safety inspections pursuant to a regulatory enforcement statute. See *Myers v. United States*, 17 F.3d 890, 902-04 (6th Cir. 1994) (no liability for alleged negligent MSHA inspection); *Howell v. United States*, 932 F.2d 915, 918-19 (11th Cir. 1991) (no liability for alleged negligent Federal Aviation Administration inspection). These courts have imposed strict tests for determining whether the undertaking increased the risk of harm, whether the government assumed another's duty toward a third party, and whether the third party relied to its detriment on the undertaking. See *Myers*, 17 F.3d at 903 (risk of harm must be increased over what it would have been had there been no undertaking, not what it would have been had person engaged in undertaking not been negligent; government cannot be held liable for assuming employer's duty to its employees because MSHA makes clear that "primary duty" of ensuring miners' safety remains with mine operator; general allegation that employers and employees rely on MSHA inspections is insufficient to show particularized and justifiable detrimental reliance on inspections); *Howell*, 932 F.2d at 919 (because inspection duties under FAA "supplement rather than supplant" private airline's duties, government does not assume airline's duties); *Blessing v. United States*, 447 F. Supp. 1160, 1193-96 (E.D. Pa. 1978) (through OSHA, government supplements rather than supplants employer's duty to provide safe workplace; therefore, as matter of law, plaintiffs may not premise government's liability on § 324A(b)

theory that OSHA inspectors assumed employer's duties); cf. *Mercer*, 460 F. Supp. at 332 (federal inspector assumes no duty to maintain compliance with safety standards "upon which either the mine operators or their employees can rely").

For the reasons discussed above, § 324A's threshold requirement that there be an undertaking of services is not met here, as a matter of law. As noted, the State is not undertaking a service for the employer or its employees, but rather is policing the employer's compliance with the law. To be sure, VOSHA is intended to protect the public, but the statute is not intended to shift the burden of protecting workers and compensating them for their workplace injuries from the employers and their workers' compensation insurers to the State.

In reality, plaintiffs' cause of action amounts to a claim of negligent enforcement of safety standards under a regulatory statute. There is no private analog for such an action. We will not allow the Tort Claims Act to be used to visit the government with "'novel and unprecedented liabilities.'" *Denis*, 159 Vt. at 486, 622 A.2d at 498 (quoting *Feres v. United States*, 340 U.S. 135, 142 (1950)).

*Affirmed.*