708 A.2d 919 (1998)
Gary and Tracy LAFOND
v.
DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, State of Vermont and Coleman Baker.
No. 96-591.
Supreme Court of Vermont.
January 23, 1998.
Jerome F. O'Neill and Laura K. Collins of O'Neill Crawford & Green, Burlington, for Plaintiffs-Appellees.
Jeffrey L. Amestoy, Attorney General, Montpelier, and Michael O. Duane and Barbara L. Crippen, Assistant Attorneys General, Waterbury, for Defendant-Appellant.
Before DOOLEY, MORSE, JOHNSON, JJ., and ALLEN, C.J. (Ret.), and GIBSON, J. (Ret.), Specially Assigned.
MORSE, Justice.
On May 7, 1992, plaintiffs' infant son died when he became entangled in a curtain cord while in his crib at Kiddie Kare Day Care, a licensed day-care center. In a lawsuit against defendant Vermont Department of Social and Rehabilitation Services, plaintiffs alleged that their son's death was caused in part by the Department's negligent inspection and supervision of the day care facility. The trial court denied the Department's motion for summary judgment based upon a claim of sovereign immunity, and we allowed an interlocutory appeal. V.R.A.P. 5(b). We now hold that the trial court erred in denying the Department's motion for summary judgment, and therefore reverse.

I.
Kiddie Kare had been licensed by the Department as a day-care facility since 1981. In 1989, plaintiffs enrolled their two daughters there, and the following year enrolled their son Tyler, who attended until his death in May 1992. Prior to enrolling their daughters, plaintiffs, who were eligible for a child-care subsidy, inquired of a Department employee whether Kiddie Kare was a covered facility and whether it was a good day-care center. The employee responded that she had nothing bad on file about Kiddie Kare and that the Department would provide the subsidy. Plaintiffs also visited the center before enrolling their daughters.
On May 4, 1992, a Department employee inspected Kiddie Kare as part of an annual relicensing requirement. Three days later, on May 7, 1992, plaintiffs' son Tyler became entangled in a curtain cord while in his crib at the Kiddie Kare center. Strangulation *920 from the cord caused suffocation and death. The inspector had not observed a curtain cord hanging down from the window next to the crib in which Tyler died. Department regulations did not prohibit or restrict curtain cords at the time of Tyler's death, although information about the risk of strangulation by such cords had been publicly available from the United States Consumer Product Safety Commission since 1985, and the inspector acknowledged that she would have inquired about its proximity to the crib if she had seen it.
Following Tyler's death, plaintiffs filed suit alleging three causes of action: (1) that defendants State of Vermont and the Department had negligently promulgated day-care safety regulations and had negligently inspected the Kiddie Kare facility, and (2) had negligently recommended the Kiddie Kare center; and (3) that defendant Coleman Baker, a departmental officer, had been grossly negligent in overseeing the inspection of Kiddie Kare.
The Department moved for summary judgment based on sovereign immunity and qualified official immunity. The trial court ultimately granted the motion as to the second and third counts as well as the negligent-promulgation claim of the first count. The court denied the motion, however, as to the negligent-inspection claim of the first count, ruling that the Department owed a duty of care to plaintiffs under the State's day-care licensing and regulatory scheme, and that there was a private analog between the State's duty and the duty owed by a private insurance company to perform an adequate safety inspection of its insured's premises under this Court's decision in Derosia v. Liberty Mutual Ins. Co., 155 Vt. 178, 187, 583 A.2d 881, 885 (1990). This appeal by the Department followed.

II.
The death of a child under the grievous circumstances presented here evokes profound sympathy for the child's family, especially his parents, whose pain and anguish can scarcely be imagined. Our duty, however, is to determine whether, as a matter of law, the doctrine of sovereign immunity bars plaintiffs' tort suit for damages against the Department. Analyzed dispassionately, the law dictates that sovereign immunity applies. The licensing and inspection of day-care facilities are inherently governmental functions which find no private analog or duty of care in our common law. Accordingly, under the Vermont Tort Claims Act, 12 V.S.A. §§ 5601-5606, and the relevant case law plaintiffs' action is barred.
Sovereign immunity protects the state from suit unless immunity is expressly waived by statute. LaShay v. Department of Social & Rehabilitation Servs., 160 Vt. 60, 67, 625 A.2d 224, 228 (1993). The State of Vermont has waived its immunity to certain suits under 12 V.S.A. § 5601(a), which in pertinent part provides:
The state of Vermont shall be liable for injury to persons ... caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner and to the same extent as a private person would be liable to the claimant....
Thus, the general rule is that "[t]he government remains immune ... for governmental functions for which no private analog exists." LaShay, 160 Vt. at 68, 625 A.2d at 229. By requiring a grounding in the common law, "this approach serves to prevent the government's waiver of sovereign immunity from encompassing purely `governmental' functions." Denis Bail Bonds, Inc. v. State, 159 Vt. 481, 485-86, 622 A.2d 495, 498 (1993). Its purpose is to "`waive immunity from recognized causes of action and ... not to visit the Government with novel and unprecedented liabilities.'" Id. at 486, 622 A.2d at 498 (quoting Feres v. United States, 340 U.S. 135, 142, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950)). Hence, "the threshold issue is whether the plaintiff's factual allegations `satisfy the necessary elements of a cause of action against the State comparable to one that may be maintained against a private person.'" Sabia v. State, 164 Vt. 293, 298, 669 A.2d 1187, 1191 (1995) (quoting Denis Bail Bonds, 159 Vt. at 487, 622 A.2d at 498).
*921 The question whether the State may be liable in tort for its allegedly negligent inspection of private facilities is not one of first impression in Vermont. Indeed, we recently addressed a claim similar to plaintiffs' in Andrew v. State, 165 Vt. 252, 682 A.2d 1387 (1996). There, the assertion was that a State inspection under the Vermont Occupational Safety and Health Act (VOSHA), 21 V.S.A. §§ 201-264, had negligently failed to discover and remedy "a conspicuous hazard that violated an OSHA regulation," resulting in injury to the plaintiffs. Id. at 254, 682 A.2d at 1388. There, as here, the plaintiffs claimed that the State's regulatory and inspection scheme created a duty analogous to the duty imposed upon private parties under Restatement (Second) of Torts § 324A (1965), which provides as follows:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
In support of their argument that Restatement § 324A established a private analog for their claim against the State, the plaintiffs in Andrew relied on this Court's decision in Derosia, 155 Vt. 178, 583 A.2d 881. There, we held that a private insurance carrier that had voluntarily assumed the duty of ensuring the safety of its insured's workplace through periodic inspections could be held liable to an injured employee under § 324A. We rejected the comparison to Derosia in Andrew, however, holding that VOSHA's regulatory scheme was not designed as an undertaking of service to the employer. Unlike Derosia, we noted, a government safety inspection "does not involve a consensual or contractual relationship between the inspector and the employer," nor was it a situation in which the "employer lacked safety expertise and [the] insurer offered to fill that gap." Andrew, 165 Vt. at 258, 682 A.2d at 1391. Rather, the relationship between the government and the employer, "refute[d] any suggestion that the State ha[d] undertaken the employer's duty to provide a safe workplace." Id. As we explained:
§ 324A's threshold requirement that there be an undertaking of services is not met here, as a matter of law.... [T]he State is not undertaking a service for the employer or its employees, but rather is policing the employer's compliance with the law. To be sure, VOSHA is intended to protect the public, but the statute is not intended to shift the burden of protecting workers and compensating them for their workplace injuries from the employers and their workers' compensation insurers to the State.
Id. at 260, 682 A.2d at 1392.
Plaintiffs here attempt to distinguish Andrew, arguing that unlike VOSHA  which is expressly designed to ensure that "all persons shall be provided by their employers with safe and healthful working conditions," 21 V.S.A. § 201(a) (emphasis added)  the State's day-care licensing and inspection scheme evinces a legislative intent to provide protective services directly to day-care operators. The argument is unpersuasive. Like VOSHA, the purpose of the State's day-care regulatory scheme is to ensure a safe environment, 33 V.S.A. § 3502(d). Also like VOSHA, the State's regulations expressly provide that "[t]he licensee shall be responsible for compliance with these" standards. Agency of Human Services, Children's Day Care Licensing Regulations for Early Childhood Programs, § A.1, 4 Code of Vt. Rules, XX-XXX-XXX-X (1989) (emphasis added). The Department's regulations, adopted pursuant to the Vermont Administrative Procedure Act, have the full force and effect of law. 3 V.S.A. § 845(a); Green Mountain Realty, Inc. v. Fish, 133 Vt. 296, 298-99, 336 A.2d 187, 189 (1975).
Thus, like the employer under VOSHA, it is the day-care facility that "retains primary responsibility for ensuring ... safety.... In contrast, the State is given a regulatory *922 enforcement role...." Andrew, 165 Vt. at 257, 682 A.2d at 1391. Indeed, as we noted with respect to VOSHA, the State's relationship with the day-care provider "is often adversarial" in nature. Id. Day-care providers must permit inspections and examinations of records by the Department, 33 V.S.A. § 306(b)(2). The State may sue the provider for injunctive relief or civil penalties for operating without a license, id. § 306(b)(5), (6), and day-care licenses may be revoked or suspended by the Department for violations that imperil health and safety. Id. § 306(b)(3). The day-care facility may appeal any licensing action by the Department to the Human Services Board, and ultimately to the Supreme Court. 3 V.S.A. § 3091(a), (f).
Thus, the primary purpose of the Department's inspection is to enforce compliance with the law, not to render services to the day-care center. See Andrew, 165 Vt. at 257-58, 682 A.2d at 1391.
The fact that Department inspectors may offer guidance to a day-care provider on how to improve its facility does not, contrary to plaintiffs' assertion, establish that the State has undertaken the provider's duty of care toward the children under its supervision. This is no different from the workplace training and educational services offered by VOSHA. See 21 V.S.A. § 221; 29 C.F.R. Part 1908. Nor, as plaintiffs urge, does the statutory requirement that day-care facilities post a notice of health and safety violations, see 33 V.S.A. § 306(b)(7), somehow suggest an undertaking by the Department to assume the day-care center's duty of care. VOSHA contains a similar requirement, see 21 V.S.A. § 225(b), and we have expressly held that "the State is not undertaking a service for the employer or its employees, but rather is policing the employer's compliance with the law." Andrew, 165 Vt. at 260, 682 A.2d at 1392; see also Corbin v. Buchanan, 163 Vt. 141, 143, 657 A.2d 170, 172 (1994) (town's failure to enforce building and fire codes did not give rise to private cause of action by plaintiffs injured in fire).
In sum, we are not persuaded that the State's enforcement scheme for ensuring adequate health and safety standards in day-care centers creates an actionable duty to plaintiffs, any more than the VOSHA provisions aimed at ensuring workplace safety shift the responsibility for workplace safety from the employer to the State. "In reality," as we observed in Andrew, "plaintiffs' cause of action amounts to a claim of negligent enforcement of safety standards under a regulatory statute. There is no private analog for such an action." 165 Vt. at 260, 682 A.2d at 1392. As noted, the Tort Claims Act was not designed to visit the government with "`unprecedented liabilities,'" of which this would surely be one. Denis Bail Bonds, 159 Vt. at 486, 622 A.2d at 498 (quoting Feres, 340 U.S. at 142, 71 S.Ct. at 157). Absent an express legislative directive to the contrary, we are not prepared to make the State and its officers effectively the liability insurer of day-care providers, or any other licensed industry.
Indeed, the number and variety of licensing and inspection programs conducted by state and local governments is staggering. Vermont statutes provide, for example, for the inspection of inpatient mental health facilities, 18 V.S.A. § 7313, nursing homes for the elderly, 33 V.S.A. § 7108, food and drug manufacturing facilities, 18 V.S.A. § 4070, hazardous waste storage facilities, 10 V.S.A. § 6609, milk production facilities, 6 V.S.A. § 2741, maple syrup processors, 6 V.S.A. § 484, frozen food manufacturers, 6 V.S.A. § 443, livestock dealers, 6 V.S.A. § 768, agricultural nurseries, 6 V.S.A. § 4023, fertilizers, 6 V.S.A. § 367, insecticides, 6 V.S.A. § 915, sewage treatment facilities, 24 V.S.A. § 3502, and all plants and facilities subject to the supervision of the public service board, 30 V.S.A. § 29, to name a few.
Nearly every resident or visitor to Vermont has daily contact with one or more entities licensed and inspected by the state. To recognize a tort duty of care arising from a day-care licensing and inspection scheme would thus have broad fiscal and policy ramifications for state and local governments, well beyond the parameters of this particular case. The creation of such a cause of action, in our view, is a matter more properly addressed by the Legislature. See Corbin, 163 Vt. at 146, 657 A.2d at 174 ("The social, fiscal, *923 tax, and public policy implications of a statute creating a private right of action based on a town's adoption of building code regulations would be enormous, and there is no indication ... that the Legislature contemplated any such consequences.").
Plaintiffs cite several decisions from other jurisdictions that have recognized that the State may be liable for injuries occurring in licensed day-care centers. See, e.g., R.E. v. State, 878 P.2d 1341, 1347 (Alaska 1994) (State owed duty of care to patrons of day-care facilities to take reasonable steps to prevent harm resulting from provider's sexual abuse of children in her care); Brasel v. Children's Servs. Div., 56 Or.App. 559, 642 P.2d 696, 699 (1982) (plaintiffs could state negligence claim premised upon State's alleged failure to investigate report of suspected child abuse in day-care facility); C.T. v. Martinez, 845 P.2d 246, 249 (Utah 1992) (State owes general duty of care to patrons of licensed day-care facilities, but no specific duty to investigate criminal background of day-care employee). None of these decisions involved a claim, like plaintiffs' here, that the State had assumed an actionable duty of care merely by virtue of its regulatory enforcement and inspection scheme.
Other out-of-state decisions are more on point and more persuasive. In Brown v. Department of Health & Rehabilitative Servs., 690 So.2d 641 (Fla.Dist.Ct.App.1997), review dismissed, 695 So.2d 698 (Fla.1997), for example, the court specifically held that there was no common law analog for imposing upon the State a duty of care to the patrons of a day-care center simply by virtue of its licensing enforcement activities. "These actions are inherent in the act of governing," the court observed, affirming a trial court decision to dismiss a claim of negligent supervision by the State. Id. at 643. Also instructive is Willow Tree Learning Ctr., Inc. v. Prince George's County, 85 Md.App. 508, 584 A.2d 157 (1991). There, as here, a child was injured on the premises of a licensed day-care facility and the child's parents claimed that the government's licensing inspection had negligently failed to discover and remedy the defect. Affirming a summary judgment in favor of the county, the appellate court held that the government had not undertaken a tort duty to the plaintiffs merely by virtue of its regulatory enforcement scheme. "We hold that the State or the County does not owe any individual duty of care merely by the enactment of a general ordinance requiring safety inspections, nor by the fact that it undertook inspections for safety violations." Id. 584 A.2d at 160-61; see also Jamierson v. Dale, 670 S.W.2d 195, 196 (Mo.Ct.App.1984) (state inspection of day-care facilities did not create duty of care to child injured by allegedly defective play-ground surface); Annotation, Governmental Liability for Negligence in Licensing, Regulating, or Supervising Private Day-Care Home in Which Child is Injured, 68 A.L.R.4th 266 (1989) (collecting cases).
Recent Vermont case law imposing tort duties upon the Department in other contexts does not mandate a contrary result. In LaShay we were not dealing with a generalized licensing and inspection scheme, but with the placement of a child by the Department in a foster home after there had been specific warnings to the Department that the child was being abused by the foster parent. 160 Vt. at 62-63, 625 A.2d at 226. Similarly, in Sabia it was alleged that the Department had failed to assist plaintiffs after repeated reports that they were being sexually assaulted by their stepfather. 164 Vt. at 297, 669 A.2d at 1190-91. In both cases, a custodial relationship had arisen between the specific plaintiffs and the Department; a settled private analog  in LaShay, the duty imposed upon private child-placement agencies; in Sabia, the common-law duty to provide assistance to one in peril  provided a solid common-law grounding on the scope of the State's duty of care. None of these circumstances was present here.
Reversed.