Vermont Democratic Party v. Republican Governor's Assoc., No. S1285-04 CnC  (Norton, J., Oct. 26, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                               SUPERIOR COURT

Chittenden County, ss.:                       Docket No. S1285-04 CnC

VERMONT DEMOCRATIC PARTY,
PETER CLAVELLE

v.

REPUBLICAN GOVERNORS ASSOCIATION

ENTRY

Democratic Candidate for Governor Peter Clavelle and the Vermont Democratic Party seek a temporary restraining order to enjoin the Republican Governors' Association from airing further television and radio advertisements in praise of incumbent Republican Governor James Douglas.  The Republican Governors is a Washington D.C. based group that works "to assist in the election of Republican gubernatorial candidates

and the re-election of incumbent Republican Governors." Clavelle argues—and the Vermont Attorney General agrees—that the Republican Governors is a political committee under the terms of 17 V.S.A. § 2801(4). Clavelle argues that this status puts them in violation of Vermont's Campaign Finance laws concerning contributions to political committees from a single source and requiring political committees to file disclosures with the secretary of state. 17 V.S.A. §§ 2805(a), 2811, 2831. By using unregulated funds and acting outside the campaign finance laws to purchase political advertisements, Clavelle urges the court to conclude that the Republican Governors have unbalanced the "level playing field as envisioned by the Vermont Campaign Finance Act"; thereby hurting him and the Democrats' campaign for governor, which gives him the right to injunctive relief.

Our Supreme Court has advised trial court judges that injunctive relief is an extraordinary remedy not routinely granted unless the right to relief is clear. Committee to Save the Bishop's House v. Medical Hospital of Vermont, 136 Vt. 213, 218 (1978). A temporary restraining order will only be granted "if it clearly appears from specific facts shown by affidavit . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party . . . can be heard in opposition." V.R.C. P. 65. The phrase "immediate and irreparable injury" is not explicitly defined by the rule, but our Court and most federal courts have agreed that standard includes at least four factors:

- The significance of the threat of irreparable harm to plaintiff if the injunction is not granted;
- The state of the balance between this harm and the injury that granting the injunction would inflict on defendant;
- The probability that plaintiff will succeed on the merits; and

- The public interest.

In re J.G. Juvenile, 160 Vt. 250, 255 n.2 (1993); 11A C. Wright, et al., Federal Practice and Procedure § 2948, at 131–33 (1995) (listing courts that have adopted the four factors for TROs). In this case, the dispositive issue is whether Clavelle and the Vermont Democrats can succeed on the merits of this claim. Their filings have not demonstrated that they will probably succeed on the merits because it fails to consider whether they have a right of action under the Vermont Campaign Finance Reform Act.

The right to injunctive relief under the Vermont Campaign Finance laws is set out in 17 V.S.A. § 2806, under the heading Penalties. Specifically, § 2806(c) provides for injunctive relief as follows: "In addition to the other penalties herein provided, a state's attorney or the attorney general may institute any appropriate action, injunction of other proceeding to prevent, restrain, correct or abate any violation of this chapter." In no other section does the law allow a private right of action for candidate grievances or even private voter complaints. Thus to the extent that this section and the Campaign Finance law create a right of action for injunctive relief, the right is limited to law enforcement officials who will investigate and then file the appropriate action.[1] This conclusion is supported by the other two penalty sections of § 2806, (a) and (b), imposing fines and imprisonment for violations, which require public, rather than private, prosecution. See State v. Int'l Collection Serv., 156 Vt. 540, 542 (1991) ("Although our overall aim is to give effect to the intent of the legislature, we must look first to the plain meaning of the statutory

---

[1] As compared to the minimal factual requirements to commence a private right of action under V.R.C.P. 8; Lane v. Town of Grafton, 166 Vt. 148, 152–53 (1997).

wording.").

This specific limitation of injunctive relief  to investigative prosecutors indicates a legislative intent to allow court intervention—such as the temporary restraining order sought by plaintiffs here—only when requested by those public officers or to effectuate their clear position—such as a clear cease and desist letter.  To reason otherwise, would implicate the courts at the request of contestants or their supporters in the political process of an election, which is not an appropriate or desirable exercise of the court's power under our governmental structure.  In effect, it would transform Vermont's Campaign Finance laws from a shield protecting voters to a sword for opposing candidates.

As to whether Clavelle and the Vermont Democrats have an implied private right to injunctive relief under the Vermont Campaign Finance laws, the question is one of legislative intent.  Cort v. Ash, 422 U.S. 66, 78 (1975); Rowe v. Brown, 157 Vt. 373, 378 (1991); Cronin v. State, 148 Vt. 252, 255 n.2 (1987) (applying multi-factor analyses to determine if legislatures intended private rights of action).  To determine legislative intent in these cases, the Vermont Supreme Court has considered: (1) whether the plaintiff is one of a class for whose special benefit the statute was enacted; (2) whether there is an indication from legislative intent, explicit or implicit, that such a right of action should exist, and (3) whether it is consistent with the underlying purposes of statute.  See Cort, 422 U.S. at 78.

Here, the Campaign Finance law places widespread restrictions on fund-raising and spending in Vermont campaigns.  Its rules apply to candidates for state representative, state senator, governor, lieutenant governor, secretary of state, state treasurer, auditor of accounts, and

attorney general, as well as to political committees and political parties. 17 V.S.A. §§ 2805(a), 2805a.  The law also applies to every contributor to a political campaign, which includes everyone under the jurisdiction of Vermont law.  § 2805(b).  Finally, the law creates filing requirements for candidates for county offices, § 2821, and candidates for local offices, § 2822. Given the broad-ranging nature of this Act, it is difficult to conceive how the legislature could have intended it to benefit just single candidates or political parties.  See Cronin, 148 Vt. at 255 (wide scope of statute contradicts individual plaintiff's argument that the statute was promulgated for his benefit).

This is further supported by the legislative findings included in the Campaign Finance Reform Act.  Landell v. Sorrell, 382 F.3d 91, 99–102 (2004); W. Russell, A Brief History of Campaign Finance Reform in Vermont, 27 Vt. L. Rev. 699, 714–15 (2003).  In particular two findings specifically address the concerns the legislature had about outside contributors and "political committees":

> (8) Limiting large contributions, particularly from out of state, and limiting campaign expenditures will encourage direct and small group contact between candidates and the electorate and will encourage the personal involvement of a large number of citizens in campaigns, both of which are crucial to public confidence and the robust debate of ideas;
> (9) Large contributions and large expenditures by persons or committees, other than the candidate and particularly from out of state, reduce public confidence in the electoral process and increase the appearance that candidates and elected officials will not act in the best interests of Vermont citizens . . .

H.28, § 1, Legislative Findings and Intent, as passed by the House on April 9, 1997, Journal of the Vermont House 585–87 (1997).  In these findings,

the emphasis is on Vermont citizens and public confidence, not candidates or political parties.  The other thirteen legislative findings demonstrate that the legislature was concerned with public confidence in the electoral process and with public access to elected officials and also support the conclusion that their intent was to protect the broader population rather than any individual candidate or political party.  Furthermore, considering the vast amount of time and energy that the General Assembly devoted to crafting this legislation, Russell, supra, at 710–18, the court has no doubt that if the General Assembly wanted to create private rights of action in order to enforce the Act, it would have expressly done so.

When combined with the prior discussion regarding the limited, but explicit, statutory right for injunctive relief through an investigative prosecutor, the inference arises that the legislature did not intend to create a private right of action.  To this end, section 2806 resembles the statutory enforcement schemes in Cronin and Wilder in its broad scope, alternative relief through agency action, and clear legislative scheme.  See Cronin, 148 Vt. at 255; Wilder v. Aetna Life & Cas. Ins. Co., 140 Vt. 16, 19 (1981).  In both of those cases, the Vermont Supreme Court inferred that the legislature did not intend on providing private rights of action. Accordingly, this court makes the same inference.

Therefore, because the court finds no legislative intent to create an implied private right of action, and because no express right of action exists in the Campaign Finance Reform Act, the plaintiffs are not the proper parties to bring this motion before the court.

Finally, plaintiffs' reliance on the New Hampshire case of Lynch for New Hampshire v. Republican Governors' Association, No. 04-S-___,

Hillsborough County (Conboy, J. Oct. 11, 2004), is sound and supportive of this decision. In that case, the Attorney General for the State of New Hampshire issued a cease and desist order against the Republican Governors' Association to stop all political activities by it within the state of New Hampshire, which the Republican Governors refused to obey, and the state obtained a court order enforcing the attorney general's directive. This is the process which is consistent with our procedure outlined earlier.

This emergency motion for injunctive relief was brought to the court's attention on Monday, Oct.25, 2004. Today the court learned the Vermont Attorney General determined the Republican Governors had violated the law by the series of ads when it was not a political party but failed to register with the Vermont Secretary of State's office. However, the Attorney General declined to seek court enforcement because the defendant was mistakenly advised it was not necessary to file. Since the attorney general could not refute this defense, and the defendant relied reasonably on the election office's determination, prosecution was not warranted.

While the Vermont statute appears to preclude an independent, private right of action, it is unclear whether the statute also terminates any private right of action in conjunction with law enforcement. In the Lynch case, for example, the candidate sought injunctive relief from the Republican Governors based on the New Hampshire Attorney General's clear position of "cease and desist."

At approximately 2pm on October 26th, candidate Clavelle and the Vermont Democrats presented additional evidence that the Vermont Attorney General has warned the Republican Governors not to purchase

additional political advertisements after October 25th and that the Republican Governors have continued to purchase advertisements on WVNY in Burlington. If true, there is an inference that this letter to the Republican Governors may be a "cease and desist" akin to the <u>Lynch</u> case. This does not answer the question of whether there is enough to create a private right to injunctive relief in candidate Clavelle and the Vermont Democrats. Yet, given the imminent harm posed to Clavelle by the Republican Governors' apparent decision to continue airing advertisements in spite of the Attorney General's position, there is enough evidence to require an emergency hearing for a preliminary injunction.

This shall be held at Chittenden Superior Court with both parties and the Attorney General or his representative. At that time, the court shall hear arguments as to whether a preliminary injunction is appropriate. The Republican Governors are ordered to provide a written copy of the advertisement or advertisements scheduled for showing on WVNY and shall be prepared to show that these are not additional expenditures in Vermont beyond those reported in its October 19, 2004 Notice of Mass Media Activities Report to the Secretary of State, as set forth in the Attorney General's October 22d letter.

The plaintiffs' motion for a temporary restraining order is DENIED. An emergency hearing for the parties shall be scheduled for Wednesday, October 27, 2004 at 1 pm at Chittenden Superior Court. The clerk is directed to give immediate notice to the parties as well as a copy of this order.

Dated at Burlington, Vermont, _____, 2004.

_____
Judge